SOLOMON DOCTORMAN et al., appellants,

*v.*

WALTER L. SCHROEDER et al., respondents.

[Decided June 20th, 1921.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"I think it would be conceded by any one that the aim of a court of equity appropriately would be always to relieve a purchaser, who had failed to comply strictly with the terms of a contract, from the forfeiture of his right to purchase a property, if it should be in the power of the court to do so. That is especially so in a case of this nature where the failure consisted of a neglect to make a tender of purchase-money at the hour named in the contract, and where the purchaser was prepared to pay the money approximately a half-hour after the expiration of the time limit agreed upon. If there can be said to be lodged in a court of equity power to relieve the complainant in this case from that default, obviously, it should be done; such a default could only be a source of substantial damage to an owner in case a new purchaser on more favorable terms could be found during the period of default, or new conditions had led the owner to wish to be relieved of the duty of sale.

"The single question, then, which is presented for consideration, to my mind, is whether this court has the power, after parties have deliberately and solemnly contracted to the time when a payment should fall due under a contract, and equally deliberately and solemnly agreed upon the consequences that should flow from a failure to pay at the time, to say that different consequences shall flow from such a default, even though the default is only a matter of minutes. Obviously, if the default has been waived a different situation exists, but, in the

absence of a waiver, it seems to me a court of equity is powerless to come to the relief of a purchaser of property who has failed to pay at the time specified in the agreement, when the agreement distinctly and clearly provides that that time is essential and that the purchaser's rights as purchaser shall cease and become void unless payment is made at the time stipulated.

"In this case the contract for the sale of this land provided for the second payment, a payment of $1,500, on the 19th of December, 1919, $500 having been prior to that time paid down by the purchaser. On that day Mrs. Doctorman, the purchaser, was unable to raise the $1,500 which she was required to pay by the terms of the contract. In that contract the parties had specifically stipulated that unless that specific $1,500 should be paid on that day, then all moneys paid on account 'shall be forfeited and this agreement shall be null and void, otherwise to remain in full force and effect.' And in a subsequent part of the agreement it is again, in another form, stipulated to the same effect by a clause stating that time shall be considered the essence of the contract. I am mistaken. That clause appears in the forepart of the clause I was first reading from.

"Clearly, there is nothing unlawful in a purchaser agreeing that she shall lose her right to buy a property if she fails to pay on a given day. I am not now discussing, and shall not discuss, because it is not involved in this case the question of the rights of the purchaser under such circumstances, in the event of a default to recover back the money already paid, but so far as the agreement relates to the loss of the right of the purchaser to buy the property in the event of failure to pay an installment at a time agreed upon, it seems to me there can be no doubt of the rights of the parties to so contract and of either party to stand upon his rights under such a contract; and when that time has arrived and the payment has not been made, it is the privilege of the owner of the property to either accept the payment at a later day or to treat the contract as null and void. I cannot see that there is the slightest doubt about that.

"In this case, the purchaser, the complainant in this suit, being unable to pay on the 19th of December the entire $1,500, induced the owner of the property to accept $500 and extend

the time for the payment of the remaining $1,000 of that installment, and the parties entered into a supplemental agreement to that effect, and in that agreement, in language which is probably as apt and as powerful and explicit as can be drawn, it is stipulated that the $500 is received—referring now to the language of the agreement—

" 'Upon condition that the further sum of $1,000 cash is to be paid by said Fannie Doctorman, the purchaser, to the said owners not later than the hour of two-thirty P. M., on Saturday, December 20th, 1919, at the rooms 30–32 Real Estate and Law Building, Atlantic City, N. J.,'

and at the end of that agreement there is added this further clause: 'It is further distinctly understood and agreed that time shall be the essence of this receipt.' The agreement is written in the general form of a receipt, although it contains these stipulations. The concluding part of what I was reading is as follows:

" 'The said sum of $500 is received with the further understanding that the said Walter L. Schroeder and Anna M. Schroeder do not in any way waive their rights or interest in said agreement, and if the said balance of $1,000 is not paid as herein mentioned, then all moneys paid upon account of said agreement and this sum of $500 shall be forfeited by said Fannie Doctorman, and said agreement of sale shall immediately become null and void.'

"Now, there it is stipulated, in language as plain as the English can be written, that the extension of time is conditional and that the rights of the purchaser of that property shall be null and void unless the $1,000, which should have been paid on the 19th is paid on the 20th, not later than the hour of two-thirty in the afternoon of that day.

"All I have said touching such an agreement, when I was commenting upon the original agreement, is equally applicable to the supplemental agreement. There is nothing unlawful or illegal in such an extension, in such an agreement, in such covenants, or in such stipulations. If the parties see fit to provide that default of payment by a certain hour of a given day shall terminate the rights of the purchaser, I know no reason why

they cannot agree to it. I can see no possible legal objection to it. It is in their power, as all of the authorities hold, to make time the essence of the contract. The parties have clearly done so in this supplemental agreement in every way that can be done.

"It transpired that the purchaser defaulted at two-thirty on the afternoon of the day named in the supplemental contract, the hour when payment should have been made under the terms of the supplemental contract. Now, what was the effect of that default: I do not recall of ever having seen any case which has discussed the subject of a stipulated hour for payment with the consequences stipulated for failure to pay upon that hour or minute, but the principle must be the same as a stipulation to pay on a given day. The time limit is fixed and the contract between these parties is that the payment must not be made later than that hour, whereas in fact the purchaser undertook to make the payment later than the time stated. That attempt, it seems to me, was entirely ineffectual, unless, of course, there was some waiver upon the part of the owner of the property.

"It is contended here, however, that there was such a waiver. I have listened with great interest to Mr. Coulomb's argument, to the effect that the circumstances that the owners of the property remained at the place appointed for some half-hour after the hour designated in the contract amounted to a waiver, because it indicated a condition of mind upon their part showing their intention to permit the purchaser to perform should she come in during the period that they determined to wait. I may almost say that I regret that I am unable to reach the conclusion that counsel urges; but I see no element in that situation that contains the necessary requisites of a waiver.

"When the time expired within which payment should be made the rights of the owners were to accept payment at a later hour or refuse to accept payment at a later hour, according as they might choose, no matter what their motives and purposes were. It may be that had the purchaser arrived five minutes after the appointed time that they would have been inclined to have accepted payment. Who knows? It may be that ten minutes after they would not have done so. But whether they would or whether they would not their rights, if they have any

rights in the matter, were to accept payment or to refuse to accept it. The latter they did. Approximately, a half an hour after the time, probably about forty minutes after, an effort was made upon the part of the purchaser to induce them to take the money and they refused to do so. Now, how is it material what their reasons were? I think I know what the reasons were. There are no two witnesses who have testified to the same things; a large number of people were present at that time and every one of them has narrated what transpired in more or less modified form, but I think I know the truth.

"I am very well convinced that the facts are that the owners of the property before the hour named for the payment on the 20th had become more or less dissatisfied with the purchaser, they had become pretty well convinced that the purchaser was not responsible. Her failure the day before to meet her engagement looked to them as though she was not responsible, and altogether they were not pleased with the person whom their agent had found as purchaser for this property and with whom they had entered into this contract. That, of course, was no ground for them repudiating the contract, and they went to the appointed place with the intention of performing, providing the payment was made as it should have been made. After the appointed hour they waited, perhaps under some persuasion upon the part of Mr. Campbell; perhaps because they were not entirely apprised of what their rights might be and were a little fearful to go off and ignore the possibility of the purchaser appearing later, so they waited; they waited for nearly half an hour, when a statement was made by the agent that if the purchaser did not appear there would not be any harm done, because he knew another man who would take the property. That is what probably happened. And it was then that the owners saw a chance to get rid of the proposed purchaser that they were dissatisfied with and they grasped at that opportunity. Accordingly, a little later, perhaps about three o'clock, when the purchaser came in and went into the other room and returned after a short period with a proposal to pay the money, the owners had determined to avail themselves of the opportunity which they

had to get rid of the purchaser, because she was behind in the time of performance. And there was then probably said all that some of the witnesses have referred to. Some of the witnesses have quoted what was said with reference to the reason why the owners would not accept the money. The real reason, however, to my mind, was that they saw the opportunity—the owners saw the opportunity—to get rid of a purchaser they did not like and they availed themselves of it.

"Now, I hold that it was their right to avail themselves of such an opportunity. They lawfully did it.

"So far as the defendant Ridgway is concerned, I am unable to see how his rights can rise any higher than the rights of the Schroeders, as owners. Mr. Ridgway, at least, knew all about the prior contracts and the rights of the purchaser under the contract. Knowing that, if he saw fit to rely upon the statement of any one other than complainants, to the effect that complainants had forfeited their rights under that contract, he did so at his peril. He surely had notice that put him upon inquiry as to whether Mrs. Doctorman had any claim of right under her contracts; and failing to make that inquiry he purchased, to my mind, subject to whatever rights it should be determined Mrs. Doctorman had against the Schroeders.

"I, therefore, base my decision in the case entirely upon the theory that when the hour for performance arrived and complainant failed to perform her rights under the contract ceased at the option of the owner.

"I will advise a decree dismissing the bill."

*Mr. Harry Cassman*, for the appellants.

*Mr. Clarence L. Cole* and *Mr. Theodore W. Schimpf*, for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—12.

*For reversal*—None.