14 N.J. Super. 116 (1951)
81 A.2d 404
ANDREW LABASH AND ANDREW A. LABASH, TRADING AS ANDREW LABASH AND SONS, PLAINTIFFS,
v.
PETER MANCINI AND FILOMENA MANCINI, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 5, 1951.
*117 Mr. Morris Dobrin, attorney for plaintiffs.
Mr. George F. Losche, attorney for defendants (Mr. Salvatore D. Viviano, of counsel).
GRIMSHAW, J.S.C.
This is a suit for the specific performance of an agreement for the sale of real property located at 13-15 Broadway, Fair Lawn, New Jersey. The contract was executed on April 19, 1950. The purchase price was $33,750, of which $1,000 was paid as a deposit on the date of the signing of the contract. An additional sum of $2,375 was to be paid on or about April 24, 1950, and the balance of $30,375 was to be paid at the closing. The closing was to take place at the office of Alexander Summer Company, Queen Anne Road, Teaneck, New Jersey, on or about August 1, 1950. In the copy of the contract retained by the *118 defendants, the date for the payment of the $2,375 was "on or about April 20th, 1950," and the date for the closing was "on or about July 1st, 1950." In other respects the two copies of the contract were identical and as the case developed these differences became immaterial.
Immediately after the contract was signed the defendants regretted their bargain and sought to relieve themselves of its burden. They refused to accept the check for $2,375 and sought to return the initial deposit. This, plaintiffs refused to accept. Many attempts were made to persuade the defendants to go through with the sale but they refused. They had decided that they could get a higher price.
The matter dragged along until July 7, 1950, when defendants' attorney sent to plaintiffs a letter in the following language:
"Please take notice that I represent the sellers, Mr. and Mrs. Peter Mancini, in a certain contract made by you with them to convey the premises in the Borough of Fair Lawn, County of Bergen and State of New Jersey, described as follows: Block 4325, Lots 17, 18, 19, 20, 21 and 22.
Said contract provides for the conveyance of said premises to you on or about July 1, 1950, at the office of Alexander Summer Co.
In view of the fact that said conveyance was not made at that time. I hereby advise you that the said sellers hereby specify August 1, 1950 at 10 o'clock in the forenoon of that day at the said office of Alexander Summer Co., as the time and place for making said conveyance pursuant to said agreement, for the purpose of making said time of the essence."
To this letter plaintiffs' attorney made reply on July 24, 1950, as follows:
"I will be ready to close title in the above entitled matter on August 1st, 1950 in account with the terms of the contract at the office of Alexander Summer Company."
On August 1, at 10 a.m., Mr. Losche, defendants' attorney, appeared at the Alexander Summer office, presumably prepared to close the title. The plaintiffs were not there. Mr. DeJohn, the agent who had negotiated the deal, called Mr. *119 Andrus, plaintiffs' attorney, and informed him that Losche and his parties were there. Andrus then talked to Losche and endeavored to have him wait until Andrus could get there with his clients. Losche refused, and left the Summer office.
Plaintiffs and their attorney appeared at the Summer office at approximately 10:30. Then they went to the office of Mr. Losche in Hackensack and waited for him until about 12:30. When Losche appeared Andrus endeavored to persuade him to go through with the closing of title. Losche said that he was without authority to take any further steps in the matter but would call his clients. The next day Losche informed Andrus that his clients declined to convey the property.
Mr. Andrus testified that on the afternoon of July 31, he had telephoned to Mr. Losche and requested that the closing be postponed until 2:00 P.M. since he had a number of morning appointments. According to Andrus, Losche agreed. Then on the morning of August 1, when Andrus talked over the telephone with Losche at the Summer office, he informed Losche that he and his clients would be on hand at 10:30. However, Losche said the deal was off and that he would not wait. Later, at Losche's office, Andrus and Losche talked privately. Andrus stated that in the course of that conversation Losche told him that the title would not have been closed even if Andrus and his clients had been on time. This statement was denied by Losche. He also denied having consented to a postponement of the closing until 2:00 P.M. There were no witnesses to the conversations between the two lawyers. Their stories as to what took place are diametrically opposed. But, as I view the situation, it is unnecessary for me to assume the unpleasant duty of determining where the truth lies.
It is well settled that where time is not of the essence of a contract, it can be made so by a later notice. But one of the essentials of such a notice is that the time then set must be reasonable. Paradiso v. Mazejy, 3 N.J. 110 (1949).
*120 I think it may be conceded that the notice setting August 1 as the closing date and making time of the essence was reasonable. But the question then arises as to whether or not the plaintiffs were apprised of the fact that a delay of half an hour would be considered by the defendants to be sufficient justification for treating the contract as broken. Defendants rely upon the case of Doctorman v. Schroeder, 92 N.J. Eq. 676 (E. & A. 1921), in which a delay of 30 minutes was held to be fatal. In that case, however, the plaintiff had defaulted upon several occasions and had been forgiven. Finally the parties agreed in writing that the required payment should be made "not later than the hour of two-thirty P.M., on Saturday, December 20th" and provided further that "if the said balance of $1,000 is not paid as herein mentioned, then all moneys paid upon account of said agreement and this sum of $500 shall be forfeited by said Fannie Doctorman, and said agreement of sale shall immediately become null and void." Vice-Chancellor Leaming, whose opinion was adopted by the appellate court, took the view that the parties had deliberately set a time limit for performance and had also agreed upon the consequences that should flow from failure to pay at that time. And he decided that under those circumstances an offer of performance 30 minutes after the time limit had expired came too late.
The facts in the present case are radically different. Almost before the ink on the contract was dry, the defendants sought to repudiate the agreement. They were the ones who defaulted in the first instance. And their action in leaving the appointed place immediately after 10 o'clock, although they knew that the plaintiffs were on their way, was an attempt to use a technicality as a means of escape from their bargain. And, it might be observed, not until the day of trial did they offer to return the deposit.
As was pointed out by the vice-chancellor in the Doctorman case, it is the aim of a court of equity, wherever possible, to relieve a purchaser from the forfeiture of his right to purchase property as a result of his failure to comply strictly *121 with the terms of the contract. If the failure to comply is not deliberate or flagrant and there are no overriding equities, a court of equity will grant relief.
In this case the equities are all on the side of the plaintiffs. At all times they have been eager to complete their bargain. The defendants, on the other hand, have sought by every means in their power to break the agreement. To permit these defendants, because of a delay of 30 minutes, to escape the obligations of their contract would be inequitable in the extreme.
Judgment for specific performance.