214 N.J. Super. 103 (1986)
518 A.2d 515
STEVEN GORRIE, PLAINTIFF-APPELLANT,
v.
ROBERT WINTERS AND MARTHA WINTERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 21, 1986.
Decided November 26, 1986.
Before Judges ANTELL, BRODY and D'ANNUNZIO.
Geltzeiler, Mandel, Berezin, & Feinstein, attorneys for appellant (Bruce D. Hersh on the brief).
*104 James B. Brown, Jr., attorney for respondents.
The opinion of the court was delivered by D'ANNUNZIO, J.S.C., (temporarily assigned).
This appeal arises out of a June 1984 contract for the sale of real estate ("contract") in which defendants ("Winters") were the sellers and plaintiff ("Gorrie") was the purchaser. Gorrie is appealing a summary judgment entered on August 28, 1985 "dismissing plaintiffs complaint".
The subject of the contract was a nine-acre tract in Marlboro Twp. The contract was contingent on sellers' acquiring all approvals for the subdivision of nine residential lots by March 25, 1985. On March 26, 1985 Winters' attorney informed Gorrie that, despite his clients' diligence, they were unable to procure the necessary approvals and that the contract was "null and void" because the subdivision contingency had failed. Gorrie refused to accept Winters' attempted termination of the contract. On April 12, 1985, Winters filed a complaint seeking a declaratory judgment that the contract had been validly terminated. Gorrie counterclaimed for specific performance. This litigation (hereinafter the April litigation) was settled and a Modification of Agreement (May modification) was executed by the parties. It effected some changes to the terms of the contract and required a closing on June 6, 1985. On that date, Winters were prepared to close but Gorrie was unable to close due to financial difficulties. As a consequence of this failed closing, the parties entered into a second Modification of Agreement dated June 6, 1985 (June modification) rescheduling the closing for July 1, 1985, at 11:00 a.m., "which time is hereby MADE OF THE ESSENCE." The closing was to take place at Gorrie's attorney's office. On July 1, 1985 at the appointed time of 11:00 a.m., Winters and their lawyer appeared at Gorrie's attorney's office prepared to close. They waited until approximately 11:45 a.m. but Mr. Gorrie did not appear. Mr. Gorrie's lawyer explained that there was a scheduling mixup *105 and that they could close later that day. The Winters declared the contract to be terminated.
On July 22, 1985, Gorrie commenced this suit for specific performance and, as part of an order to show cause, he was granted an order temporarily restraining Winters from disposing of the property. On the return date of the order to show cause, Winters' motion for summary judgment was granted because the trial judge refused to intervene and change the contract which the parties had made regarding the time and place of closing.
Time may be made of the essence by agreements modifying the original contract. Brinn v. The Mennen Co., 4 N.J. 610 (1950). The June modification made time of the essence for July 1 at 11:00 a.m. Gorrie breached his agreement to close on that date and at that time by his failure to appear and tender the purchase moneys. Appellant invokes Labash v. Mancini, 14 N.J. Super. 116 (Ch.Div. 1951), as this court's authority to forgive Gorrie's non-performance under the June Modification Agreement. In Labash, the sellers had made time of the essence for a closing on August 1 at 10:00 a.m. Purchasers' attorney received adequate notice of that closing date and responded that he would be ready to close title "on August 1, 1950". At the appointed time and place the sellers' attorney appeared, prepared to close, but the purchasers were not present. A broker involved in the transaction telephoned the purchasers' attorney who then spoke with the sellers' lawyer and asked him to wait until he and his clients could arrive. Sellers' attorney refused and left. The purchasers arrived with their attorney at 10:30 a.m. Citing no authority, the trial court relieved the purchasers of their breach because "the equities are all on the side of the [purchasers]." Id. at 121. Evidently the trial judge was swayed by the fact that immediately upon the signing of the contract the sellers "regretted their bargain and sought to relieve themselves of its burden." Id. at 118. "Many attempts were made to persuade the defendants to go *106 through with the sale but they refused. They had decided that they could get a higher price." Ibid.
The Labash decision appears to be contrary to Doctorman v. Schroeder, 92 N.J. Eq. 676 (E. & A. 1921) in which the Court of Errors and Appeals affirmed and adopted the opinion of the Vice Chancellor who held that a delay of 30 minutes was fatal where time for performance was of the essence.
The trial judge in Labash misread the Doctorman opinion thereby committing a fundamental error as to the authority of the trial court. The trial judge cited Doctorman for the purported rule that "it is the aim of a court of equity, wherever possible, to relieve a purchaser of the forfeiture of his right to purchase property as a result of his failure to comply strictly with the terms of the contract." Labash v. Mancini, 14 N.J. Super. at 120-121. This quoted excerpt from Labash accurately paraphrases a portion of the introductory sentence of the Doctorman opinion. But the last phrase of that introductory sentence is critical and was not considered by the Labash court. It states "... if it should be in the power of the court to do so." Doctorman v. Schroeder, 92 N.J. Eq. at 676. In Doctorman, the court ruled that it did not have the power, stating:
... in the absence of a waiver, it seems to me a court of equity is powerless to come to the relief of a purchaser of property who has failed to pay at the time specified in the agreement, when the agreement distinctly and clearly provides that that time is essential and that the purchasers' rights as purchasers shall cease and become void unless payment is made at the time stipulated. [at 676-677; emphasis supplied].
With the exception of Labash, the Doctorman rule has been applied consistently. Wachung Realty and Development Co. v. Llewellyn Holding Corp., 96 N.J. Eq. 498 (Ch. 1924); Wyatt v. Bergen, 98 N.J. Eq. 502 (Ch. 1924), aff'd 98 N.J. Eq. 738 (E. & A. 1925); Strauss v. Rabe, 97 N.J. Eq. 208 (Ch. 1925), aff'd o.b. 98 N.J. Eq. 700 (E. & A. 1925); Sonek v. Hill B & L Assoc., 138 N.J. Eq. 534 (Ch. 1946), aff'd o.b. 140 N.J. Eq. 108 (E. & A. 1947); Brinn v. The Mennen Co., supra. For pre-Doctorman cases, see Collins v. Delaney Co., 71 N.J. Eq. 320 (Ch. 1906) and cases *107 cited therein. "An express contract, making time a particular of it, cannot be ignored by a court of equity." Id. at 322.
Appellant's reliance on Elm Land Co., Inc. v. Glasser, 69 N.J. Super. 290 (App.Div. 1961) and Salvatore v. Trace, 109 N.J. Super. 83 (App.Div. 1969), aff'd o.b. 55 N.J. 362 (1970) is misplaced. In the former case, time was of the essence for a closing on March 1, 1961 with no specification of the hour. The court held that plaintiff's offer conveyed at 5:50 p.m. to close at 6:00 p.m. was reasonable. In Salvatore, the court found a waiver of the required closing date.
Making time of the essence is an effective, time honored tool of contract administration and enforcement. It provides certainty and objectivity in the definition of rights and obligations between contracting parties, particularly when it has been negotiated between the parties and expressly made a part of their agreement. The alternative is a date for performance which is subject to adjournment and, ultimately, to a test of reasonableness applied by a trier of fact. The effectiveness of making time of the essence is dependent upon the expectation and understanding of the parties that their negotiated agreement requiring performance on a specified day and at a specified time will be strictly enforced without resort to litigation to determine whether the defaulting party's non-performance should be excused. Judicial tampering with the parties' agreement emasculates this tool and promotes litigation instead of the certainty and objectivity sought by the parties.
The merit of these observations is demonstrated by the facts of this case. The parties entered into this contract in 1984. In so doing, sellers took their property off the market and assumed the risk that the deal would not be consummated if they were unable to procure the necessary approvals. In exchange, Gorrie deposited $5,000.00 against a purchase price of $335,000.00. In March 1985 sellers did not have the approvals and they sought to terminate the contract. There is no allegation that the Winters failed to pursue the necessary approvals with *108 due diligence. Instead of accepting termination of the contract, Gorrie attempted to waive the approval contingency. That dispute gave rise to the April litigation initiated by Winters to bring an end to this transaction. The May modification settled the April litigation and the Winters were assured of a closing on June 6, 1985. Gorrie was unable to close. The April litigation and the May modification did not bring this transaction to a close. Accordingly, Winters negotiated the June modification and in that modification resorted to the very specific time of the essence closing, justifiably expecting that the transaction either would close at the specified time or would be terminated by Gorrie's failure to close. Gorrie did not appear and now seeks judicial intervention to modify, in effect to delete, the time of the essence provision in the June modification. He is not entitled to it; the Winters are entitled to the full benefit of that provision.
Affirmed.