DALE BARLET, RICHARD BARLET AND LEN CANCILLA,
PLAINTIFFS-RESPONDENTS, v. BARBARA FRAZER,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 4, 1987—Decided June 10, 1987.

Before Judges J.H. COLEMAN, R.S. COHEN and GRUCCIO.

*Himelman, Drucker, Hurley & Himelman*, attorneys for appellant; (*James P. Hurley*, on the brief).

*Orlovsky, Grasso & Moody*, P.A., attorneys for respondents; (*John J. Mensching*, of counsel and on the brief).

The opinion of the court was delivered by:

GRUCCIO, J.A.D.

Following a bench trial in the Superior Court, Chancery Division, Ocean County, the trial judge ordered specific performance of a contract for the sale of real estate. Defendant Barbara Frazer (seller) contends before us that plaintiffs Dale Barlet, Richard Barlet and Len Cancilla (buyers) failed to comply with the specific terms of a notice making time of the essence of an agreement of sale and, thus, the trial court was compelled to find the agreement unenforceable against defendant.

The facts are essentially uncontested. The parties entered into a contract for the sale of lots 30 and 33 of Block 1.210 in Manchester, New Jersey. Defendant is employed by Brokers General Abstract Corporation and enlisted John Campbell, a co-employee, to negotiate for the sale of her lots. Dale Barlet, one of the purchasers, entered into negotiations with Campbell in October 1985, which culminated in an agreement for sale dated December 21, 1985. The agreement was prepared by Len Cancilla, a licensed New Jersey realtor, and provided for a closing date "on or about February 1, 1986." The agreement did not contain a reference to a specific time on February 1, nor did it contain a clause making "time of the essence." Plaintiffs, thereafter, consulted with counsel who ordered the necessary search, survey and percolation tests; however, the requested data did not arrive on time and closing did not occur on February 1, 1986.

Thereafter, on February 10, 1986, defendant consulted attorney Martin E. Silverman who wrote a letter on her behalf which *unilaterally* stated, inter alia:

> This letter shall serve as notice that Barbara Frazer as seller in the said transaction is making time of the essence with respect to said contract. The contract will be considered a nullity unless title is closed, consideration paid and the deed accepted at the office of Brokers General Abstract Corp., 89 Riverwood Drive, Toms River, New Jersey, on February 20, 1986, at 1:30 p.m. E.S.T.

Counsel for plaintiffs replied to Silverman's letter, enclosed a copy of the preliminary title report, requested that title be taken in the name of Dale Barlet only and suggested closing be at his office on the date and time unilaterally set by defendant. However, Silverman replied that he had no authority to change any of the terms in the contract or in the time of the essence letter.

On February 20, 1986, there was conversation between Silverman and a representative of the law office handling the closing on behalf of plaintiffs indicating that the attorney assigned to handle the closing was ill but that plaintiffs did intend to close that day and, further, that plaintiff Barlet would pick up the necessary closing documents and then go to the address fixed for settlement. Barlet did, in fact, pick up the requisite documents and at approximately 1:30 p.m., left his attorney's office and headed directly to the designated place of closing. Just prior to Barlet's departure at 1:30, a representative of that law firm called Silverman and advised that Barlet was on his way with the closing documents. When Barlet arrived at the address designated for closing, however, defendant had left the office even though she worked there and was paid for work on that date. The delay in arriving for the closing was "an hour to an hour-and-a-half."

The trial judge, upon these facts, concluded that plaintiffs acted diligently considering the fact that the attorney who was to handle the transaction was sick and telephone calls were made to Silverman informing him of buyers' intention to close.

Thus, the court ordered specific performance. We agree and affirm substantially for the reasons expressed by Judge Wiley in his oral opinion of September 18, 1986.

We point out that following Judge Wiley's decision, *Gorrie v. Winters*, 214 *N.J.Super.* 103 (App.Div.1986) was published which strictly enforced a *contract provision* making time of the essence. Without indicating whether or not we would apply *Gorrie*'s holding to every factual situation involving time of the essence, we note that we are not dealing here with an "express contract [provision] making time a particular of it [which] cannot be ignored by a court of equity." *Id.* at 107. Rather, here we have a unilateral direction of one of the parties to a contract making time of the essence without prior consultation or negotiation with the other party to fix the time and place of the closing. Indeed, plaintiff Barlet was ready, willing and able to close on February 20, 1986, and the illness of his attorney which resulted in the brief hour to hour-and-a-half delay is insignificant and subject to the equitable power of the court. *Gorrie, supra,* specifically states:

> Making *time of the essence is an effective,* time honored *tool of contract administration and enforcement. It provides certainty and objectivity* in the definition of rights and obligations between contracting parties, particularly *when it has been negotiated between the parties and expressly made a part of their agreement. . . . The effectiveness of making time of the essence is dependent upon the expectation and understanding of the parties that their negotiated agreement* requiring performance on a specified day and at a specified time *will be strictly enforced* without resort to litigation to determine whether the defaulting party's non-performance should be excused. *Judicial tampering with the parties' agreement emasculates this tool* and promotes litigation instead of the certainty and objectivity sought by the parties. [*Id.* at 107; emphasis added].

In the matter before us, we find no tampering with the contractual agreement of the parties. To the contrary, the equity court thoughtfully and carefully analyzed the factual setting under which the unilateral fixing of time was made and, for all intents and purposes, carried out. We do not read *Gorrie* to apply to a situation where a time of the essence provision is unilaterally set by one of the parties to a contract.

The facts in *Gorrie* and the cases discussed therein all, with the exception of *Labash v. Mancini*, 14 *N.J.Super.* 116 (Ch.Div. 1951), deal with specific contract provisions or contract modifications negotiated and agreed to by all parties.

The case before us is more akin to *Labash, supra*, wherein the Chancery court determined that plaintiffs were entitled to specific performance notwithstanding their 30-minute delay in arriving at the place designated for closing. In *Labash*, closing was originally scheduled for July 1, 1950. The matter dragged on, however, until July 7, when defendants' attorney sent plaintiffs' attorney a letter unilaterally fixing the closing for August 1, 1950, at 10 a.m. Defendants arrived with their attorney promptly at 10 a.m.; plaintiffs had not yet arrived and the agent who had negotiated the deal called plaintiffs' attorney and advised that sellers were at his office ready to close. *Id.* at 118–119. Plaintiffs' attorney spoke with defendants' attorney, advised that he and the buyers were on their way and requested the sellers to await their arrival. Plaintiffs did arrive at 10:30 a.m.; however, defendants had already left. *Id.* at 119. The court found that defendants "leaving the appointed place immediately after 10 o'clock, although they knew that the plaintiffs were on their way, was an attempt to use a technicality as a means of escape from their bargain." *Id.* at 120.

 We have the same situation here. The closing was set for defendant's place of employment; she was paid for a full day of work although she left the office sometime after 1:30 p.m. and before plaintiff Barlet arrived there. Telephone calls were made to defendant's attorney in the morning of the day set for closing advising of Barlet's intention to close despite the illness of the attorney assigned to handle the closing. Indeed, just as Barlet left his attorney's office, defendant's attorney received another telephone call from that office advising that Barlet was on his way with all the requisite documents in hand and was ready, willing and able to close. It is well-established that

[i]n contracts for the sale or purchase of land, delay of one party must be greater in order to discharge the duty of the other than in mercantile contracts. Under [the] view [of *Restatement, Contracts,* § 276], how great a delay is permissible depends upon all the circumstances; it is a question for the trier of the facts. [*Hodes v. Dunsky,* 5 *N.J.Super.* 333, 337–338 (App.Div.1949), quoting 1 *Restatement, Contracts,* § 276 at 407 (1932)].

Indeed, the fact-finding function is entirely within the province of the chancery judge. Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence. *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 484 (1974).

Our review of the record convinces us that Judge Wiley was entirely correct in his findings and conclusions.

Affirmed.