241 N.J. Super. 510 (1990)
575 A.2d 518
LEE EPSTEIN WINER, PLAINTIFF-APPELLANT, AND CROSS-RESPONDENT,
v.
KENNETH BRIAN WINER, DEFENDANT-RESPONDENT, AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1990.
Decided June 7, 1990.
*512 Before Judges SHEBELL and KEEFE.
Sabrina A. Kogel argued the cause for appellant (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys; Mark H. Sobel, of counsel; Sabrina A. Kogel, on the brief).
Harold M. Savage argued the cause for respondent (Savage & Savage, attorneys; Harold M. Savage, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiff Lee Epstein Winer appeals from those portions of a final dual judgment of divorce entered by the Family Part that denied her request to relocate to Atlanta, Georgia and those *513 portions of the judgment pertaining to equitable distribution. Defendant Kenneth B. Winer cross-appeals with respect to certain aspects of the equitable distribution of marital property.
Plaintiff and defendant met in Atlanta, Georgia around 1976 when defendant lived and worked in Tennessee. In 1979, defendant moved to Atlanta in order to attend graduate school, after which plaintiff and defendant started to see more of one another. On plaintiff's birthday, August 1, 1980, defendant proposed marriage and presented her with a four-carat engagement ring. The ring had been left to defendant by his deceased mother. During the parties' engagement, and throughout their marriage, the ring was kept in a safe deposit box due to its value and was only worn on special social occasions.
In January 1980, defendant purchased a condominium in Atlanta with monies from his inheritance. He stated at trial that his reason for purchasing the condominium was twofold:
Number one, I wasn't happy where I was living, and I wanted to live somewhere better; and I wanted to do it then and not wait. So it was that reason, and also for after we got married I knew we could live there and be comfortable, but instead of buying a small place I bought a little bit larger place.
According to plaintiff, the condominium was purchased to be the couples' marital home. Title to the property was, however, placed exclusively in defendant's name. During March of 1981, the couple moved into the condominium. Plaintiff expended her own time and money decorating the couple's new home.
On April 5, 1981, the couple were married and they continued to reside at the condominium for approximately a year and a half. During the first six months of the marriage the defendant was unemployed. He then was able to obtain a position selling insurance. He remained at that position for approximately one year. During the parties' second year of marriage, defendant rejoined his family's business in Tennessee. The parties moved to Tennessee, and rented the Atlanta condominium.
*514 In September of 1983, the parties' first child was born in Tennessee. At the end of 1983, defendant was transferred to the family business' home office in New Jersey. Initially, the couple lived in a rented condominium, but soon bought their own home in Livingston. On October 14, 1985, the parties' second child was born. The couple had ongoing problems with their marriage occasioning them to visit therapists several times. In the most recent years of their marriage, defendant would leave the family home for work as early as 7 a.m. and not return home until 7:30 p.m. or later.
In support of her request for permission to relocate with the parties' children to Atlanta, plaintiff demonstrated that she had family and friends in Atlanta that would help provide her and the children with emotional and financial support. Testimony at trial revealed that both parties had used drugs on occasion. In addition, the testimony showed that several members of plaintiff's family had past problems of alcohol and drug abuse. Plaintiff's mother testified that she was a recovering alcoholic and drug addict.
The court also had available to it the report of a court appointed psychiatrist, who found both plaintiff and defendant to be suitable parents. Among his other conclusions, the psychiatrist found that plaintiff "makes a major point about her stable and supportive Atlanta family. If [defendant's] assessment is accurate, if [sic] it is quite possible [plaintiff's] family may prove to be less supportive then she says."
The court decided to place the custody of the children with plaintiff with the following caveat:
The Court wants to make it abundantly clear to plaintiff that if it is determined in the future that she uses marijuana or any other illegal drug in her home while her children are present, regardless of whether they are in the same room as she is while she is engaging in this activity, the Court would not hesitate to change custody.
Plaintiff testified that she wanted defendant to have liberal visitation rights if relocation were allowed. Defendant, on the other hand, asserted, "I can't imagine any visitation of my *515 children that would be satisfactory [in the event of relocation]; but I would want to see them as much as possible."
The court granted the parties a judgment of divorce and found that the Atlanta condominium, the parties' 1985 Volvo station wagon, the marital home, the contents of the marital home, both plaintiff's and defendant's individual I.R.A.'s and joint money market fund were subject to equitable distribution. The court also awarded weekly child support of $100 per week for each child and $350 per week alimony. Regarding visitation, the court suggested that "defendant see his children two-weekday nights a week after work and alternate weekends from 8 a.m. Saturday to 8 p.m. Sunday and alternate holidays."
Defendant held an interest in a realty investment partnership. In addition, defendant participated in a 401(K) plan for profit sharing and retirement benefits. According to the court's decision from the bench, there was little evidence offered at trial with respect to defendant's 401(K) plan. The court concluded that contributions to the plan did not commence until defendant was employed for five years and that his interest in the plan did not vest for 15 to 20 years. It determined that there was insufficient evidence regarding the 401(K) plan and excluded it from equitable distribution. With respect to the realty investment partnership, the court concluded that because the defendant acquired his interest in the realty investment partnership prior to the marriage, and never offered it in any way as a gift to plaintiff, it was excluded from equitable distribution.
The court also determined that the engagement ring was given to plaintiff as a conditional gift subject to actual marriage and was not subject to equitable distribution. The court decided "that plaintiff should receive 25 percent of the net value of the assets."

I.
Plaintiff contends that pursuant to the New Jersey Supreme Court's decision in Holder v. Polanski, 111 N.J. 344, 544 A.2d *516 852 (1988), which interprets the "cause" provision of N.J.S.A. 9:2-2, she should have been allowed to relocate with the children to Atlanta. Plaintiff argues that defendant has not met his burden of showing that if relocation did occur a reasonable visitation schedule could not be arranged.
In support of her position the plaintiff tracks the course of court interpretations of the "cause" provision of N.J.S.A. 9:2-2 and the standards used to guide decisions regarding whether relocation of a custodial parent is proper. See D'Onofrio v. D'Onofrio, 144 N.J. Super. 200, 365 A.2d 27 (Ch.Div.), aff'd, 144 N.J. Super. 352, 365 A.2d 716 (App.Div. 1976); Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606 (1984); Holder, 111 N.J. 344, 544 A.2d 852 (1988) (given in order of historical development). Plaintiff cites various decisions from other states to support her conclusion that the national trend favors the allowance of relocation of a custodial parent unless there is proof that such a move would be against the best interests of the child[ren]. See, e.g., Novak v. Novak, 441 N.W.2d 656 (N.D. 1989); Bohms v. Bohms, 144 Wis.2d 490, 424 N.W.2d 408 (1988); Blake v. Blake, 207 Conn. 217, 541 A.2d 1201 (1988); Pintado v. Leggett, 545 So.2d 311 (Fla. Dist. Ct. App. 1989); Anderson v. Anderson, 170 Mich. App. 305, 427 N.W.2d 627 (Mich. Ct. App. 1988).
N.J.S.A. 9:2-2 provides:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order. The court, upon application of any person in behalf of such minors, may require such security and issue such writs and processes as shall be deemed proper to effect the purposes of this section.
In Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606 (1984), the Supreme Court noted that the vast majority of states fall somewhere between requiring no showing of cause in the absence of specific evidence from the noncustodial parent that the move would be against the best interests of the child[ren] *517 and the standard of "exceptional circumstances" before removal is permissible. Id. at 52, 491 A.2d 606. The Court went on to hold:
[T]o establish sufficient cause for the removal, the custodial parent initially must show that there is a real advantage to that parent in the move and that the move is not inimical to the best interests of the children. Removal should not be allowed for a frivolous reason. The advantage, however, need not be a substantial advantage but one based on a sincere and genuine desire of the custodial parent to move and a sensible good faith reason for the move. To establish that the move is not inimical to the best interests of the children, the moving party must show that no detriment to the children will result from the move. [Id. at 56, 491 A.2d 606 (footnote omitted)].
The Court stated that relevant considerations included whether the move had the capacity to improve the custodial parent and child[ren's] quality of life and the integrity of the parties' motives in favor and against the move. Cooper, 99 N.J. at 56-57, 491 A.2d 606. The Court also expressed that an important consideration to any evaluation concerning relocation is the establishment of "[a] realistic and reasonable visitation schedule ... that will provide an adequate basis for preserving and fostering a child's relationship with the noncustodial parent if the removal is allowed." Id. at 57, 491 A.2d 606. The burden of proving that a reasonable alternative visitation schedule would be impossible, or unduly burdensome to the point of adversely affecting the noncustodial parent's relationship with the child[ren] if removal were allowed, was placed on the noncustodial parent. Id. at 57-58, 491 A.2d 606.
In Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988), the Supreme Court modified the standard established in Cooper that required a noncustodial parent to show "real advantage" would result from relocation. See id. at 349, 544 A.2d 852. The Court recognized the changes that occur in the family unit as a result of a divorce. Holder, 111 N.J. at 349, 544 A.2d 852. It stated:
As men and women approach parity, the question arises when a custodial mother wants to move from one state to another, why not? Until today, our response has included the requirement that the custodial parent establish, among other things, a real advantage to that parent from the move. Cooper v. *518 Cooper, 99 N.J. 42, 56 [491 A.2d 606] (1984). We now modify that requirement and hold that a custodial parent may move with the children of the marriage to another state as long as the move does not interfere with the best interests of the children or the visitation rights of the non-custodial parent. [Ibid.].
Thus, the standard for allowing removal is now primarily what is in the best interest of the children. Holder, 111 N.J. at 349-50, 544 A.2d 852. The children's best interest in this situation is closely related to the noncustodial parent's right to visitation. Id. at 352, 544 A.2d 852. "From that perspective, the `cause' requirement of N.J.S.A. 9:2-2 implicates the best interests of the child as manifested through visitation with the noncustodial parent." Ibid., citing Cooper, 99 N.J. at 50, 491 A.2d 606; D'Onofrio, 144 N.J. Super. at 204-05, 365 A.2d 27. The court specifically held "that any sincere, good faith reason will suffice, and that a custodial parent need not establish a `real advantage' from the move." Holder, 111 N.J. at 352-53, 544 A.2d 852.
With respect to the noncustodial parent's right to visitation, the Holder Court found:
If the move will not substantially change the visitation rights, then the court should determine whether the move would be inimical to the best interests of the children.
If, however, the move will require substantial changes in the visitation schedule, proofs concerning the prospective advantages of the move, the integrity of the motives of the party, and the development of a reasonable visitation schedule remain important. Cooper v. Cooper, supra, 99 N.J. at 56-57 [491 A.2d 606]. The emphasis, however, should not be on whether the children or the custodial parent will benefit from the move, but on whether the children will suffer from it. [Holder, 111 N.J. at 353, 544 A.2d 852].
The burden remains with the noncustodial parent to prove that as a result of relocation, visitation will be affected in a way that will prove harmful to the child[ren]. See ibid.; Cooper, 99 N.J. at 57-58, 491 A.2d 606. In both Cooper and Holder, the central concern was balancing the children's best interests, the noncustodial parents' right to visitation viewed in light of the children's best interest, as well as the noncustodial parents' interest in visiting with the children and the custodial parents' right *519 to be free to move. Holder, 111 N.J. at 349-50, 544 A.2d 852; Cooper, 99 N.J. at 55, 491 A.2d 606.
Plaintiff argues that while the trial court made passing reference to the holding in Holder, it did not apply the standards established by the Supreme Court. First, the plaintiff asserts that the trial court did not make any findings concerning plaintiff's good faith reason for wishing to remove the children from New Jersey. Second, plaintiff maintains that defendant failed to show that removal would so severely affect his right to visitation as to be inimical to the best interests of the children. The trial court specifically found after reviewing the holdings in Cooper and Holder:
In applying the test laid down by the Supreme Court, the Court finds that permitting the plaintiff to move to Georgia with the two children would adversely affect the visitation rights of the defendant and thus, have an adverse impact on the children. The problem is the distance. If the plaintiff were to move back to Atlanta with the children, then the defendant and the children would not have time together....
When dealing with children ages 5 and 3, this seems totally inadequate. The children have relatives in New Jersey and in Georgia....
The bottom line, however, is that where children are of tender years, such are the two children here, they should have as much contact with the non-custodial parent as possible and, if they are permitted to relocate to Georgia with plaintiff, the contact of the non-custodial parent with the children would be decreased. The Court feels that this is not in the best interest of the children and, therefore, plaintiff's request to relocate is denied.
In Zwernemann v. Kenny, 236 N.J. Super. 37, 45, 563 A.2d 1158 (Ch.Div. 1988), aff'd, 236 N.J. Super. 1, 563 A.2d 1139 (App.Div. 1989), the court found that the custodial parent's suggested visitation plan was unreasonable and thus restrained the parent from relocating. 236 N.J. Super. at 45, 48, 563 A.2d 1158. The custodial parent sought to move to Florida with the parties' 9-year-old son. Id. at 39-40, 563 A.2d 1158. Her reasons were increased economic opportunities, better climate and a desire to be closer to her mother. Id. at 44-45, 563 A.2d 1158. As the court noted, all of these reasons clearly fell within the concept of good faith as established in Holder. Ibid. Nevertheless, the court determined the suggested visitation plan was inadequate to replace the current relationship between *520 the noncustodial parent and the child, and the court concluded that relocation would be detrimental to the best interest of the child. Id. at 45, 563 A.2d 1158.
Clearly, the trial judge here found that as a result of relocation defendant's right to visitation would be limited. The court did not question plaintiff's motive for wanting to move to Atlanta. Her desire was to be closer to her family and friends. The desire to live closer to one's relatives is a sufficient good faith reason for wanting to move. See Murnane v. Murnane, 229 N.J. Super. 520, 529, 552 A.2d 194 (App.Div. 1989), quoting Holder, 111 N.J. at 353, 544 A.2d 852. The trial judge found, however, that the best interests of the children would be harmed as a direct result of the loss of visitation time with their father. See Zwernemann, 236 N.J. Super. at 45, 563 A.2d 1158. While this finding comports with the Supreme Court's ruling in Holder, 111 N.J. at 352, 544 A.2d 852, the court's finding that the move to Atlanta "would adversely affect the visitation rights of the defendant and thus, have an adverse impact on the children[]" standing alone is insufficient. See Murnane, 229 N.J. Super. at 530-31, 552 A.2d 194.
The trial court was required to make findings regarding the establishment of an alternative visitation schedule if the move were to occur. See Holder, 111 N.J. at 353, 544 A.2d 852; Murnane, 229 N.J. Super. at 530, 552 A.2d 194. Although the trial court found that a move to Atlanta would severely restrict defendant's visitation, defendant did not produce evidence concerning a suitable alternate visitation schedule as was his burden. See Holder, 111 N.J. at 353, 544 A.2d 852; Cooper, 99 N.J. at 57-58, 491 A.2d 606; Murnane, 229 N.J. Super. at 530, 552 A.2d 194. While concern over a schedule for visitation is important, "in our mobile society, it may be possible to honor that schedule and still recognize the right of a custodial parent to move." Holder, 111 N.J. at 353, 544 A.2d 852.
We agree that if plaintiff were to move it would have an adverse effect on defendant's ability to see his children, since *521 the move would affect the children as they would be unable to see their father as often as they have in the past. However, the loss of visitation may be mitigated under an alternate visitation schedule, and the effect on the children must be weighed against the custodial parent's freedom to move. Holder, 111 N.J. at 350, 353, 544 A.2d 852. Here, the trial court did not specifically address the creation of an alternative visitation schedule. Id. at 353, 544 A.2d 852. Under Holder some level of reduction in the amount of visitation must be deemed acceptable. Id. at 350-53, 544 A.2d 852.
We remand so that the Family Part may accept proof and address more specifically how an alternative visitation schedule would be so insufficient as to be inimical to the best interests of the children. See Holder, 111 N.J. at 353, 544 A.2d 852; Murnane, 229 N.J. Super. at 530, 552 A.2d 194. The court should also consider the ability of the parents to maintain a reasonable visitation schedule under their now-existing financial circumstances. Zwernemann, 236 N.J. Super. at 45, 563 A.2d 1158.

II.
Plaintiff argues that the court erred in its allocation of marital assets for equitable distribution. She points out that the court limited its analysis to the criteria set out in Painter v. Painter, 65 N.J. 196, 211, 320 A.2d 484 (1974), and therefore did not consider the mandatory provisions for making equitable distribution found in N.J.S.A. 2A:34-23.1.
On November 14, 1988, N.J.S.A. 2A:34-23.1 was approved and made effective as of September 1, 1988. See N.J.S.A. 2A:34-23.1, Historical Note referring to N.J.S.A. 2A:34-13, Historical Note, L. 1988, c. 153. The Historical Note to N.J.S.A. 2A:34-13, which is applicable to N.J.S.A. 2A:34-23.1 states, "[t]his act shall take effect on September 1, 1988, and shall apply only to orders and judgments entered after that date." (Emphasis supplied). N.J.S.A. 2A:34-23.1 codifies several of *522 the criteria found in Painter. Compare Painter, 65 N.J. at 211, 320 A.2d 484 with N.J.S.A. 2A:34-23.1(a) to (e). However, the statute also adds several factors to be considered in making an equitable distribution of marital property. The factors found in N.J.S.A. 2A:34-23.1 that are of particular concern are:
f. The economic circumstances of each party at the time the division of property becomes effective;
g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage;
h. The contribution by each party to the education, training or earning power of the other;
i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a party as a homemaker.
In Painter the Supreme Court suggested the following criteria be taken into account when making findings concerning equitable distribution:
Guideline criteria over the broad spectrum of litigation in this area include: (1) respective age, background and earning ability of the parties; (2) duration of the marriage; (3) the standard of living of the parties during the marriage; (4) what money or property each brought into the marriage; (5) the present income of the parties; (6) the property acquired during the marriage by either or both parties; (7) the source of acquisition; (8) the current value and income producing capacity of the property; (9) the debts and liabilities of the parties to the marriage; (10) the present mental and physical health of the parties; (11) the probability of continuing present employment at present earnings or better in the future; (12) effect of distribution of assets on the ability to pay alimony and support, and (13) gifts from one spouse to the other during marriage. [Painter, 65 N.J. at 211, 320 A.2d 484, quoting 118 N.J. Super. 332 at 335, 287 A.2d 467].
The trial court made the following findings concerning equitable distribution:
The final step in the analysis is to determine the equitable allocation of the value of these assets. The criteria on determining the allocation is set forth [in] Painter vs. Painter, supra, at page 211 [320 A.2d 484]. The factors which have to be considered in arriving at the allocation is the earning abilities of the parties (at present plaintiff is unemployed but with the hope to be employed within 4 years, while defendant is employed and is receiving a salary, a portion of which represents an advance by the owner, because of the present need for *523 money); the duration of the marriage  7 years; the standard of living during their marriage, which the Court finds to be in excess of their current ability to maintain which required the defendant to utilize money he inherited in order for the parties to live; money or property each party brought into the marriage (defendant contributed the purchase price of the Atlanta condominium, down payment and the closing cost of the marital home; the improvements which came from his inheritance, as well as the use of his inheritance for the parties to live); effect of distribution of assets on defendant's ability to pay alimony and child support; and finally the contribution of each spouse to the acquisition of the marital property. Plaintiff's contribution is to be measured in terms of her housemaking abilities, her care and nurturing of the children and the support of her husband and as a member of the marriage partnership. This marriage was not a particularly happy one from the outset. Although the plaintiff did stay home with the children and was the primary caretaker of the children after they were born, the Court finds that her overall contribution to the marital partnership was much less than equal. Considering the source of funds for the major purchase of the assets of the marriage, the seven-year length of the marriage, the provisions made for plaintiff's support and support of the children, the Court finds that the plaintiff should receive 25 percent of the net equitable value of the assets.
Plaintiff maintains that the difference in her educational background and defendant's, her contribution to defendant's education, her contribution as a homemaker, her primary custodial responsibility for care of the parties' children and her lack of training and skills due to her absence from the job market are all mandatory considerations not taken into account by the trial court. N.J.S.A. 2A:34-23.1(g). She also maintains that the court failed to consider the disparate economic circumstances of the parties at the time equitable distribution of the property was to become effective. N.J.S.A. 2A:34-23.1(f).
Defendant maintains that because plaintiff never requested strict application of the factors found in N.J.S.A. 2A:34-23.1, and never objected to the court's use of the criteria from Painter, she should be barred from requesting the retroactive application of N.J.S.A. 2A:34-23.1. He points to the fact that the plaintiff had ample time to request the use of the factors found in N.J.S.A. 2A:34-23.1 during the interim between the court's decision from the bench and its final order. Further, he argues that the plaintiff ratified the court's allocation of marital assets by accepting distribution of a portion of those assets. *524 As a general matter, "[i]t is a well-settled principle that appellate courts should decline to consider issues not fully presented at trial unless the issues are jurisdictional or concern matters of great public interest." Matter of Board of Educ. of Town of Boonton, 99 N.J. 523, 536, 494 A.2d 279 (1985), cert. den. sub nom, Kramer v. Public Employment Relations Commission, 475 U.S. 1072, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986).
N.J.S.A. 2A:34-23.1 was approved after the court's decision, but its effective date was prior to that decision. See N.J.S.A. 2A:34-13, Historical Note. The statute is specifically made applicable "to orders and judgments entered after ..." September 1, 1988. Although courts generally disfavor retroactive application of statutes, where the Legislature clearly expresses such an intent, the statute should be retroactively applied. See Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974); Grippo v. Schrenell and Co., 223 N.J. Super. 154, 161, 538 A.2d 404 (App.Div. 1988); accord State v. Bey, 112 N.J. 45, 103, 548 A.2d 846 (1988). Nonetheless, we are satisfied that the trial judge's failure to make express findings on each of the statutory criteria was harmless error and that the resultant award of equitable distribution would remain unchanged had they been expressly considered and applied. R. 2:10-2; see also Grippo, 223 N.J. Super. at 162, 538 A.2d 404.

III.
Plaintiff maintains that the trial court erred by not making defendant's 401(K) plan subject to equitable distribution. The trial court's entire findings with respect to defendant's 401(K) plan are as follows:
In addition, the defendant has a 401(K) Plan with Winer Industries. The only evidence before the Court is that this plan is not vested and contributions are not made until defendant is employed for 5 years; and that he does not vest for a period of 15 to 20 years. In the absence of any evidence in the record, other than what has been recited, the Court has no basis to include the defendant's 401(K) Plan in its calculation of value for equitable distribution.
*525 Defendant asserts that the 401(K) plan's sole purpose is profit-sharing, and that the plaintiff failed to prove it should be included in the equitable distribution of the parties' marital property.
In Kikkert v. Kikkert, 177 N.J. Super. 471, 474, 427 A.2d 76 (App.Div.), aff'd o.b., 88 N.J. 4, 438 A.2d 317 (1981), this court stated:
The court is authorized by law "to effectuate an equitable distribution of property, both real and personal which was legally and beneficially acquired by [the parties] or either of them during the marriage." N.J.S.A. 2A:34-23. The critical task is to properly interpret the phrase "legally and beneficially acquired." We have been instructed to employ a "comprehensive" definition and include such property as "is the direct or indirect result of an expenditure of effect on the part of a spouse, ...." Painter v. Painter, 65 N.J. 196, 215, 217 [320 A.2d 484] (1974). It was therefore concluded that "all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce." Id. at 217 [320 A.2d 484]. "[T]he concept of vesting should probably find no significant place in the developing law of equitable distribution ... These now customary usages of the concept of vesting are in no way relevant to the question of effecting an equitable distribution...." Stern v. Stern, 66 N.J. 340, 348 [331 A.2d 257] (1975). Our inquiry should more properly focus on whether rights or benefits were "acquired" by the parties or either of them during the marriage, rather than on whether they were "vested." Ibid.; Pellegrino v. Pellegrino, 134 N.J. Super. 512, 515-516 [342 A.2d 226] (App.Div. 1975). See Scherzer v. Scherzer, 136 N.J. Super. 397, 401-402 [346 A.2d 434] (App.Div. 1975), certif. den., 69 N.J. 391 [354 A.2d 319] (1976). [Footnote omitted].
Thus, the concept of vesting no longer plays a significant role in determining whether a pension, or other forms of deferred compensation earned during marriage, are to be subject to equitable distribution. See Whitefield v. Whitefield, 222 N.J. Super. 36, 45-47, 535 A.2d 986 (App.Div. 1987); see also Moore v. Moore, 114 N.J. 147, 158-159, 553 A.2d 20 (1989).
It is undisputed that defendant does participate in a 401(K) plan through his family's business. The plan started for defendant in 1985. At the end of 1986, defendant's plan had a value of $1,624. Defendant thus was involved in a deferred compensation plan for at least two years of the marriage and may be able to draw on these funds after five years of employment. If defendant completes five years of employment, some portion *526 (e.g., 2/5) of the plan's fund should be subject to equitable distribution. See Whitefield, 222 N.J. Super. at 45, 48, 535 A.2d 986. Therefore, since these funds were acquired during the course of the marriage, regardless of their vesting, they are subject to equitable distribution. See Kikkert, 177 N.J. Super. at 475, 427 A.2d 76.
"[T]he burden of establishing the immunity of an asset from equitable distribution rests with the party asserting the immunity...." Weiss v. Weiss, 226 N.J. Super. 281, 291, 543 A.2d 1062 (App.Div.), certif. den., 114 N.J. 287, 554 A.2d 844 (1988), citing Painter, 65 N.J. at 214, 320 A.2d 484; see also Landwehr v. Landwehr, 111 N.J. 491, 504, 545 A.2d 738 (1988). The plaintiff has demonstrated the existence of the 401(K) plan. She has also shown that the plan existed during a portion of the parties' marriage. Indeed, defendant himself has stated that the plan had a value earned from the period of January 1, 1986, to December 31, 1986, of $1,624. Although more information regarding the terms and value of the plan may have proven helpful, the trial court's conclusion not to include in the equitable distribution the funds of the 401(K) plan earned during the course of the marriage was an error. On remand the trial court should include defendant's 401(K) plan in its order for equitable distribution of marital property. Distribution may be deferred provided plaintiff is granted the benefit of the continued appreciation, if any, of her portion of the asset.

IV.
Defendant contends in his cross-appeal that the Atlanta condominium purchased by him prior to the parties' marriage should not have been subject to equitable distribution. He points to the fact that the purchase was made exclusively with his own funds and that title to the property was in his sole name. In addition, he claims that the plaintiff did not participate in the selection of the property, nor was it his intention *527 that the condominium would be the couple's marital home. Contrary to this assertion, defendant himself testified:
I wasn't happy where I was living, and I wanted to live somewhere better; and I wanted to do it then and not wait. So it was that reason, and also for after we got married I knew we could live there and be comfortable, but instead of buying a small place I bought a little bit larger place. [Emphasis supplied].
Similarly, during her testimony plaintiff expressed her belief that the condominium was purchased as a marital home.
Relying on this court's holding in Weiss v. Weiss, 226 N.J. Super. 281, 543 A.2d 1062 (App.Div.), certif. den., 114 N.J. 287, 554 A.2d 844 (1988), the trial court found that the condominium was purchased in anticipation of marriage, and therefore was subject to equitable distribution. In Weiss, this court concluded that a date prior to the marriage ceremony may be used for determining what property is subject to equitable distribution. 226 N.J. Super. at 287, 543 A.2d 1062. The court stated:
[W]e believe that for the purpose of triggering a right of equitable distribution a marital partnership may be found to have commenced prior to the marriage ceremony, where the parties have adequately expressed that intention and have acquired assets in specific contemplation of their marriage. This conclusion recognizes that the "shared enterprise" of marriage may begin even before the actual marriage ceremony through the purchase of a major marital asset such as a house and substantial improvements to that asset. [Ibid.].
Therefore, where the evidence shows that an asset was purchased in specific contemplation of marriage, that asset will be subject to equitable distribution. Ibid. The trial judge's findings are supported by the record, and he was correct in including this asset in equitable distribution. Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607, 560 A.2d 655 (1989); Barlet v. Frazer, 218 N.J. Super. 106, 110-11, 526 A.2d 1141 (App.Div. 1987).

V.
Defendant also asserts that the engagement ring he gave plaintiff should be subject to equitable distribution. He argues that the gift of an engagement ring does not become effective until after the marriage ceremony is complete. Therefore, he *528 maintains that the engagement ring is marital property. This argument is without merit.
An engagement ring is a conditional gift. See Aronow v. Silver, 223 N.J. Super. 344, 347, 538 A.2d 851 (Ch.Div. 1987), quoting Sloin v. Lavine, 11 N.J. Misc. 899, 900, 168 A. 849 (Sup.Ct. 1933) and Albanese v. Indelicato, 25 N.J. Misc. 144, 144-45, 51 A.2d 110 (D.Ct. 1947). The condition is marriage and the ring is returnable only if the engagement is broken. See Aronow, 223 N.J. Super. at 348-50, 538 A.2d 851.
In Lipton v. Lipton, 134 Misc.2d 1076, 514 N.Y.S.2d 158, 159-60 (N.Y. Sup. Ct. 1986), a New York trial court stated:
[t]he question of the conditional nature of the gift became moot upon the marriage when the ring unconditionally became the property of the plaintiff. Therefore, the ring given prior to the marriage retains its character as separate property not subject to equitable distribution.
We agree with the quoted reasoning of the New York court and hold that the engagement ring in question is not subject to equitable distribution.
We reject defendant's argument that because the ring was given in anticipation of marriage, it is subject to equitable distribution under Weiss, 226 N.J. Super. at 287, 543 A.2d 1062. Weiss did not contemplate that an engagement ring, traditionally a conditional gift for the sole use of a woman, should be considered a "marital asset such as a house ..." Ibid.
We remand to the Family Part for a hearing, reconsideration and findings regarding whether an appropriate child visitation schedule would make plaintiff's requested move to Atlanta, Georgia feasible under present circumstances. We further direct the inclusion of defendant's 401(K) plan in the order for equitable distribution of marital assets. In all other respects, the judgment is affirmed.