ANNE WIST, PLAINTIFF-APPELLANT, v. GEORGE R. WIST, DEFENDANT-RESPONDENT.

Argued November 18, 1985—Decided January 13, 1986.

*Leroy P. Lusardi* argued the cause for appellant.

*Michael J. Stanton* argued the cause for respondent (*Schachter, Wohl, Cohn & Trombadore,* attorneys).

PER CURIAM.

This matrimonial appeal raises questions concerning the conclusiveness of an agreement between the parties, on the record,

awarding custody to the mother and the extent of deference owed to determinations of the trial court. The majority in the Appellate Division ruled that the trial court erred in failing to accord finality to the agreement as well as in numerous rulings involved in the court's award of custody to the father. The dissent would have affirmed the trial court's ultimate determination including its refusal to give effect to the record stipulation. Agreeing, in part, with the majority's result—a remand for a new trial—and, in part, with the dissent's analysis, we modify the Appellate Division's judgment in accordance with this opinion.

Plaintiff, Anne Wist, sued her husband, George Wist, and he counterclaimed, both for divorce on the grounds of extreme cruelty. The record indicates that both were suitable parents. The trial court, concluding that the custody issue was "genuine and substantial," set an early hearing date pursuant to *R.*5:8–6.

### As the Appellate Division majority noted:

Prior to the commencement of the hearing, the parties' attorneys advised the judge that they had reached agreement on custody and visitation. The parties then each testified as to the terms of the agreement. Both agreed that the children would live with plaintiff and that the husband would have visitation rights two evenings each week and on alternate weekends and alternate holidays, dividing Christmas Day and the children's birthdays between them. Each also agreed to "call this arrangement joint custody." The further details of this arrangement were that the husband would have free access to all the children's medical and school reports, that he be consulted about intended medical and dental care for the children and be permitted to obtain a second medical opinion except in the case of emergencies, that he could from time to time take the children on non-visitation weekends for the purpose of participating in a sports program, that he would have "first refusal" on babysitting and that his parents would have some visitation rights. The parties further agreed that neither parent would remove the children from the state without giving the. other 30 days prior notice and that neither would remove the children from the state for trips longer than three weeks without the consent of the other. Each party also acknowledged the view that the agreement was fair and reasonable. In short, irrespective of its denomination, the actual arrangement was the entirely unexceptionable and typical one of custody in one parent, the mother, with liberal visitation and participation in the lives of the children by the other parent, the father. The trial judge expressly approved the agreement, directing the submission of a conforming form of judgment.

Thereafter the parties were unable to agree on the form of judgment. The trial court, after hearing their differing positions, determined to reject the agreement and ordered a trial on all issues, including custody. At the conclusion of the trial, custody was awarded to the father despite the agreement which appeared to give custody to the mother. The trial court, in its opinion, did not view the agreement as being final or conclusive, and accorded it no weight in the ultimate resolution of the custody case.

The Appellate Division majority and dissent differed in their interpretation of the agreement and, implicitly, in their views of the extent of the trial court's discretion. The majority ruled that the completeness of the agreement combined with the trial court's approval amounted, as a matter of law, to a final judgment for custody pursuant to *R.*5:8–6; that the matters disputed after the agreement was put on the record could either have been resolved or tried by the court; and that under all of the circumstances the failure to agree on the form of written judgment was irrelevant. From the majority's point of view, the custody trial was therefore unwarranted and "subjected the litigants and the court system to an unjustifiable expenditure of time, money and energy" since, as a matter of law, the agreement had the effect of awarding custody to the mother. The dissent, stressing the parties' explicit characterization of custody in the record agreement as "joint," concluded that the subsequent dispute over who was to make day-to-day decisions, especially when considered in light of the mother's ambiguous testimony on that issue in the proceeding when the agreement was put on record, was fundamental. Based on that and other differences between the parties, the dissent concluded that no agreement had been reached and that its rejection by the trial court was therefore proper.

We disagree with the majority's ruling that the trial court as a matter of law was required to accept the agreement

governing custody.[1]  We also disagree with the dissent, to the extent that it implies that, as a matter of law, the agreement *could* not govern the custody issue even if the trial court were able to resolve the parties' differences.  Where the issue, whether there was complete agreement on custody, is as close as it was here, the parties contending that important matters remained in dispute, the trial court, in its discretion, depending on all of the circumstances, could have determined that the disputed matters were not substantial or genuine, or resolved them consistent with the agreement of the parties, or attempted to persuade the parties to agree, or tried the unresolved issues, or rejected the agreement entirely.  Numerous factors bear on that discretion, not the least of which is the trial court's perception concerning the likely constructive effect of what once may have been an agreement, but is no longer: will it produce a stable custodial relationship in the best interests of the children or, given the dispute as to its terms, is its enforcement more likely to produce simply more litigation? [2]  Obviously a record agreement *may* be so complete that subsequent disagreement, even in good faith, will not undo it.  The trial court's contrary conclusion in this case, however, was neither

---

[1]Cf. Sheehan v. Sheehan, 38 *N.J.Super.* 120 (App.Div.1955), where the trial court based the custody determination solely on an agreement between the spouses after the father had asked to withdraw from the agreement. The Appellate Division remanded for the trial court to hold a full hearing on the fitness of the parents and the welfare of the children, noting that "the agreement is not dispositive of the issue [of custody], since the determining factor is the present and future welfare of the children.... Whatever the agreement of the parents, the ultimate determination of custody lies with the court in the exercise of its supervisory jurisdiction as *parens patriae*." *Id.* at 125 (citations omitted).

[2]See Petersen v. Petersen, 85 *N.J.* 638 (1981) (escalation clause in agreement setting terms and conditions for alimony and support declared not invalid *per se*). Justice Handler stated:

Voluntary accommodations regarding matrimonial differences are highly desirable and make a major contribution to the fulfillment of "the strong public policy favoring stability of arrangements." *Smith v. Smith, supra,* 72 *N.J.* [350] at 360 [(1977)], quoted in *Lepis v. Lepis, supra,* 83 *N.J.* [139] at 147–148 [(1980)]. [*Id.* at 645.]

arbitrary nor an abuse of discretion. It would have been preferable, of course, had the trial court detailed its reasoning for rejecting it.

The trial court's power, reasonably exercised, to reject the agreement as conclusive on the custody issue does not negate the intrinsic importance of that stipulation. It clearly contemplated the mother as primary custodian. The possible factors leading a trial court to reject such an agreement (some based in part on a trial court's evaluation of the parties' demeanor)—the probable instability of the custodial arrangements, the insufficiency of time available to the parties in formulating the stipulation, the relative importance of the matters remaining in dispute, the relative incompleteness of the matters covered, or some of them—may be sufficient to warrant rejection of the agreement as *conclusively* determining the custody issue but not be sufficient to warrant a failure to give it *any* weight in the ultimate determination of custody. Under the circumstances of this case, the trial court was required to give some consideration to that mutually-agreed-upon disposition, even though incomplete, according such weight to it as the circumstances warranted. We cannot say what effect consideration of the agreement might have had on the outcome in this case because, as noted above, the trial court mentioned only the inconclusiveness of the parties' negotiations, without according their substance any weight.

Were this matter before us immediately after the award of custody to the father despite the parties' relatively clear intention to the contrary, we would remand this matter to the trial court for reconsideration of the custody issue in light of all relevant factors, including the agreement. The fact is, however, that as a result of the trial court's custody determination, the children have lived with the father for more than one-and-a-half years. Any remand of the custody issue, if it is to assure that the best interests of the children will be served, must consider the effect of this paternal custody (as the Appellate Division majority concluded in its determination). Given all of

these factors, we conclude that a remand to the trial court for a plenary hearing on custody is warranted. At that hearing, the court shall consider all of the relevant circumstances, including this one-and-a-half-year period of paternal custody, and may refer to and use the existing trial record. It shall include in its consideration the effect, if any, of the prior record agreement on the issue before it, understanding that while it was within its power initially to reject it, it was beyond its power not to consider it.

■ Our remand differs from that of the Appellate Division majority. While its discussion of the desirability of expert opinion on the custody issue and its conclusion that this was an appropriate case for the trial court, in its discretion, to retain such an expert (since the parties did not) is sound, we disagree with its conclusion that on remand there *must* be such expert testimony. While such a conclusion might be correct in some cases, there is really nothing very unusual about the custody issue in this case. Expert testimony *would* be helpful; it is desirable even in an ordinary case. The law, however, does not invariably require it, either of the parties or of the court. We have recognized the "inherent power of the court to appoint such witnesses." *Id.* at 27. As we have stated elsewhere: "In its discretion the trial court may call an impartial expert witness to testify at the [custody] hearing." *Sorentino v. Family & Children's Soc. of Elizabeth,* 72 *N.J.* 127, 133 (1976).

Since the other questions raised below are far from crucial and, in any event, may no longer be disputed on remand, we find it unnecessary to pass upon them.

The judgment of the Appellate Division is modified, the matter remanded to the trial court for a new trial on the issue of custody in accordance with this opinion.

*For modification and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.