286 N.J. Super. 448 (1996)
669 A.2d 837
CARMINE CERMINARA, PLAINTIFF-APPELLANT,
v.
TERESA CERMINARA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1995.
Decided January 17, 1996.
*450 Before Judges MICHELS, BAIME and VILLANUEVA.
Laura M. Le Winn argued the cause for appellant.
Ann R. Bartlett argued the cause for respondent (Alexander & Bartlett, attorneys; Ms. Bartlett, of counsel and on the brief).
*451 The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Carmine Cerminara appeals from portions of a dual judgment of divorce of the Chancery Division, Family Part, that permitted defendant Teresa Cerminara to relocate permanently to Virginia with the two minor children born of their marriage and directed him to pay defendant permanent alimony.[1] More precisely, the provisions of the judgment challenged on this appeal are the following:
ORDERED and ADJUDGED that the following stipulations, having been entered into on the record by counsel for the parties, be and the same are hereby incorporated herein:
* * * * * * * *
D. Plaintiff shall pay to Defendant as and for permanent alimony the sum of $200 per month commencing when Defendant relocates to the Commonwealth of Virginia, the amount having been stipulated but not the permanency; and
* * * * * * * *
4. ORDERED and ADJUDGED that the Defendant shall be entitled to relocate the children of the parties and herself to the Commonwealth of Virginia as of August 1, 1995; and it is further
* * * * * * * *
6. ORDERED and ADJUDGED that the visitation set forth in J-1 (attached hereto) shall control for the period of time that the parties remain living in the State of New Jersey and the portion of J-1 addressing the circumstance of Defendant and the children living in the Commonwealth of Virginia shall be controlling after Defendant and the children relocate there, with the revisions set forth herein. After she was relocated to Virginia, Defendant shall provide all transportation for the weekends specified in J-1 and for vacation visitation with Plaintiff, except four times a year when the parties shall meet at a half-way point. Defendant shall give Plaintiff at least 14 days notice of those weekends that she chooses to meet Plaintiff at a half-way point. In addition to the visitation in J-1, Plaintiff shall have reasonable and liberal visitation in Virginia which is expected by this Court to occur monthly, it being the finding of this Court that it is in the best *452 interests of the children of the parties for them to have visitation with the Plaintiff every two weeks.
Should Plaintiff acquire a residence at a mid-way point between the Somerville area and the place of Defendant's residence, Defendant shall transport the children to the mid-way point residence for Plaintiff's visitation when so requested by Plaintiff and otherwise Defendant shall provide transportation to New Jersey as per the above paragraph; and it is further
7. ORDERED and ADJUDGED that for the summer of 1995, Plaintiff shall have the children with him from the last day of school through July 16, 1995. The children shall then go back to Defendant for the period from July 17, 1995 through August 17, 1995. The children shall go back to the Plaintiff for the period of August 18, 1995 through August 27, 1995, at the end of which period Defendant shall pick them up to return to her residence; and it is further
* * * * * * * *
14. ORDERED and ADJUDGED that the nature of the alimony payable by Plaintiff to Defendant shall be permanent and it shall not be affected by Defendant's employment full-time as a teacher, a circumstance contemplated by the court. The alimony would be subject to modification, however, by Defendant's full-time employment as a certified public accountant or any other change in circumstance, or circumstance not anticipated by this Court in making this ruling, it being the finding of this Court that Defendant's earning capacity is lower than Plaintiff's earning capacity; ....
Plaintiff seeks a reversal of the foregoing portions of the judgment, contending that (1) the judgment permitting defendant to relocate permanently to Virginia with the two children is based on findings of fact not supported by substantial credible evidence in the record and on legal conclusions that are incompatible with established controlling precedent, and (2) the trial court erred in awarding defendant permanent alimony. We disagree and affirm.
We have carefully considered the record and all of the arguments presented and are satisfied that the portions of the dual divorce judgment challenged on this appeal are based on findings of fact which are adequately supported by the record. R. 2:11-3(e)(1)(A). Moreover, we are convinced the trial court did not mistakenly exercise its discretion in permitting defendant to relocate permanently to Virginia with the children born of the marriage and in awarding defendant permanent alimony; and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E).

*453 I.
In general, the removal of children from this State by a custodial parent is governed by N.J.S.A. 9:2-2, which, in pertinent part, provides:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction ... without the consent of both parents, unless the court, upon cause shown, shall otherwise order.
In Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606 (1984), the Supreme Court clarified the standards to be followed in determining whether to permit the custodial parent to remove a child from the State of New Jersey. The Court held that in order "to establish sufficient cause for ... removal" when an application therefor is challenged, the custodial parent must make a threshold showing that "there is a real advantage to that parent in the move and that the move is not inimical to the best interests of the children." Id. at 56, 491 A.2d 606. Although frivolous reasons will not justify removal, the purported advantage need not be substantial. Rather, it need only be based "on a sincere and genuine desire of the custodial parent to move and a sensible good faith reason for the move." Ibid. As long as the move will not result in any detriment to the children, such as cutting them off from special medical or educational care, it will not be deemed inimical to their best interests. Moreover, whether the custodial parent has made this threshold showing is to be determined independent of visitation considerations.
If the custodial parent makes the requisite initial showing, then a court must take into account other factors in deciding the application for removal. "The first factor to be considered is the prospective advantages of the move in terms of its likely capacity for either maintaining or improving the general quality of life of both the custodial parent and the children." Id. at 56-57, 491 A.2d 606. Also instrumental to a court's decision are the bona fides of "the custodial parent's motives in seeking to move" and those of the noncustodial parent in objecting to the move. Id. at *454 57, 491 A.2d 606. Lastly, a court must consider, in light of the facts of each case, whether a "realistic and reasonable visitation schedule can be reached if the move is allowed." Ibid. Evidence of these factors may be used to rebut either the custodial parent's threshold showing or "the arguments of the noncustodial parent against removal." Ibid.
Providing additional guidance, the Court explained that "[a] realistic and reasonable visitation schedule is one that will provide an adequate basis for preserving and fostering a child's relationship with the noncustodial parent if the removal is allowed." Ibid. The Court cautioned against interfering with a pattern of weekend visitation because such visitation evidences the noncustodial parent's sincerity in maintaining a closeness with the child. However, the burden of establishing that an alternative visitation schedule is not feasible is upon the noncustodial parent, who has all the necessary proofs at his or her disposal. Id. at 57-58, 491 A.2d 606. "The more evidence there is that the noncustodial parent's visitation with the children will be adversely affected, the more of a showing of compelling reasons to move must be made by the custodial parent." Id. at 58, 491 A.2d 606. Proof of mere inconvenience is insufficient "to overcome [the] custodial parent's right to remove the children after he or she has met the threshold showing" that removal should be allowed. Ibid.
However, the Cooper standard was subsequently modified in Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988), by eliminating the requirement that the custodial parent show a real advantage to the move. Under the Holder test, "a custodial parent may move with the children of the marriage to another state as long as the move does not interfere with the best interests of the children or the visitation rights of the non-custodial parent." Id. at 349, 544 A.2d 852. All the custodial parent need establish is that he or she has a "good-faith reason" for making the move. Id. at 353, 544 A.2d 852. In short, absent "an adverse effect on the noncustodial parent's visitation rights or other aspects of a child's best interests, the custodial parent should enjoy the same freedom of *455 movement as the noncustodial parent." Id. at 352, 544 A.2d 852. See Murnane v. Murnane, 229 N.J. Super. 520, 529, 552 A.2d 194 (App.Div. 1989) (stating that "[t]he Holder Court modified the rule of Cooper by holding that `any sincere, good faith reason will suffice, and that a custodial parent need not establish a "real advantage" from the move.'").
With respect to this test, the Holder Court emphasized:
[P]roofs concerning the prospective advantages of the move, the integrity of the motives of the party, and the development of a reasonable visitation schedule remain important. Cooper v. Cooper, supra, 99 N.J. at 56-57 [491 A.2d 606]. The emphasis, however, should not be on whether the children of the custodial parent will benefit from the move, but on whether the children will suffer from it. See ibid. Motives are relevant, but if the custodial parent is acting in good faith and not to frustrate the noncustodial parent's visitation rights, that should suffice. Maintenance of a reasonable visitation schedule by the noncustodial parent remains a critical concern, but in our mobile society, it may be possible to honor that schedule and still recognize the right of a custodial parent to move. In resolving the tension between a custodial parent's right to move and a noncustodial parent's visitation rights, the beacon remains the best interests of the children.
[Holder, supra, 111 N.J. at 353-54, 544 A.2d 852.]
See also Rampolla v. Rampolla, 269 N.J. Super. 300, 307, 635 A.2d 539 (App.Div. 1993); Winer v. Winer, 241 N.J. Super. 510, 520-21, 575 A.2d 518 (App.Div. 1990). Cf. McMahon v. McMahon, 256 N.J. Super. 524, 529-37, 607 A.2d 696 (Ch.Div. 1991).
Analyzed in light of these principles, the trial court properly granted defendant permission to relocate to Virginia with the two children. Contrary to plaintiff's claim, the trial court's decision does not lack either a factual or a legal basis.
The trial court found that under Holder, supra, plaintiff had proven a good faith reason to move, specifically concluding that defendant would be happier in Virginia. Contrary to plaintiff's position, the mere fact that defendant was admittedly capable of caring competently for her children, while at the same time being personally unhappy with living in New Jersey, is not sufficient reason to deny removal. Clearly, the personal happiness of the custodial parent impacts on the relationship of the parent with the children of the marriage and thereby serves the best interests of the children. The trial court appropriately considered this factor.
*456 Additionally, there were facts before the trial court that refuted plaintiff's and Dr. Greenberg's opinion that defendant was not interested in maintaining plaintiff's role as a father. For example, defendant agreed to a very generous visitation schedule and even offered to drive the children to plaintiff's home in New Jersey or half way there to allow him to have more time to spend with them. While plaintiff and Dr. Greenberg submit that defendant failed to consider the impact of a move on plaintiff's relationship with his children, these facts speak otherwise.
Nor is there any merit to plaintiff's assertion that the trial court failed to consider the best interests of the children because it disregarded some of Dr. Greenberg's recommendations. In this regard, we emphasize that the trial court was not bound by the findings and opinions of Dr. Greenberg, even though she was the court-appointed expert. See Todd v. Sheridan, 268 N.J. Super. 387, 400-01, 633 A.2d 1009 (App.Div. 1993); see also McMahon, supra, 256 N.J. Super. at 537, 607 A.2d 696. The trial court was obligated to make its own findings of fact and conclusions of law. There are several factors relevant to the best interests of a child that a trial court considers when weighing the competing interests of the parents, including the cost of living, the benefit of having family nearby and the quality of education and health care. If, as here, the custodial parent has a good faith reason for the move, absent infringement upon the child's best interests, the move will be allowed. Holder, supra, 111 N.J. at 352, 544 A.2d 852.
The trial court based its findings that the move would be in the children's best interests on several factors, including the defendant's personal happiness and the greater economic and professional opportunities for her in Virginia. Additionally, the trial court found that defendant's family in Virginia would be able to provide significant emotional and financial support. The proofs concerning defendant's job with her father's accounting firm, the invitation to live in her parents' home until her new home is built, the gift of a lot next to her parents' home and their offer to finance its construction, support this conclusion.
*457 The trial court also found that the move was not a bad faith endeavor to spirit the children away from plaintiff or thwart his visitation rights. While the trial court recognized that the removal of the children to Virginia would affect plaintiff's visitation rights, it found that so long as an appropriate and reasonable visitation schedule was created, a sufficient basis existed under prevailing law to justify the move.
While plaintiff's visitation schedule is a critical concern, "in our mobile society, it may be possible to honor that schedule and still recognize the right of a custodial parent to move." Holder, supra, 111 N.J. at 353, 544 A.2d 852; see also Murnane, supra, 229 N.J. Super. at 530, 552 A.2d 194; Winer, supra, 241 N.J. Super. at 520, 575 A.2d 518. Here the trial court properly balanced the best interests of the children, plaintiff's visitation rights, and the right of defendant to move and, in so doing, ordered a reasonable visitation schedule. The trial court awarded the parties joint custody of the children and granted plaintiff more summer vacation time with the children than even Dr. Greenberg recommended. The trial court also encouraged plaintiff to visit his children anytime he was in Virginia. Finally, the trial court ordered full telephone access for the children to the other parent, equal sharing or alternating the girls' birthdays, fostering continued love and respect for the other parent and counselling.
Although defendant's move to Virginia will affect plaintiff's visitation rights, there is nothing in the record before us to show that plaintiff will not be able to maintain substantial contact with his children. Moreover, the fact that visitation may be made more difficult by such a move "standing alone is insufficient" to deny defendant's relocation plan. Winer, supra, 241 N.J. Super. at 520, 575 A.2d 518; Murnane, supra, 229 N.J. Super. at 530-31, 552 A.2d 194. The best interests of the children remain the central concern, Holder, supra, 111 N.J. at 353-54, 544 A.2d 852, and the trial court properly considered the children's best interests in allowing defendant to relocate to Virginia. Defendant is the main *458 caregiver for these children, and defendant's move to Virginia with its economic advantages is clearly in the children's best interests.
In sum, substantial credible evidence in the record as a whole supported the findings and conclusions of the trial court that permitted defendant to relocate from New Jersey to Virginia with the two children and there is no sound reason or justification for disturbing them. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).

II.
Finally, we are satisfied that the trial court properly ordered plaintiff to pay defendant permanent rather than rehabilitative alimony. The law is clear that courts may award alimony in divorce actions "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990) (quoting N.J.S.A. 2A:34-23). It is well settled that an alimony award should be designed to continue the standard of living enjoyed by a party prior to the separation. See Innes, supra, 117 N.J. at 503, 569 A.2d 770; Mahoney v. Mahoney, 91 N.J. 488, 501-02, 453 A.2d 527 (1982); Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980); Khalaf v. Khalaf, 58 N.J. 63, 69, 275 A.2d 132 (1971); Guglielmo v. Guglielmo, 253 N.J. Super. 531, 543, 602 A.2d 741 (App.Div. 1992); Aronson v. Aronson, 245 N.J. Super. 354, 364, 585 A.2d 956 (App.Div. 1991).
The primary factors that the trial court must consider in awarding alimony are the actual need of the dependent spouse, the ability of the supporting spouse to pay and the duration of the marriage. Mahoney, supra, 91 N.J. at 502, 453 A.2d 527. In 1988, the Legislature amended N.J.S.A. 2A:34-23 to include additional factors that should be considered by courts in awarding permanent or rehabilitative alimony. These include:
(1) The actual need and ability of the parties to pay;
(2) The duration of the marriage;

*459 (3) The age, physical and emotional health of the parties;
(4) The standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living;
(5) The earning capacities, educational levels, vocational skills, and employability of the parties;
(6) The length of absence from the job market and custodial responsibilities for children of the party seeking maintenance;
(7) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;
(8) The history of the financial or non-financial contributions to the marriage by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;
(9) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair; and
(10) Any other factors which the court may deem relevant.
[N.J.S.A. 2A:34-23b.]
"In any case in which there is a request for an award of rehabilitative or permanent alimony, the court shall consider and make specific findings on the evidence about the above factors." N.J.S.A. 2A:34-23b. This amendment also permits the award of permanent or rehabilitative alimony or both. Finelli v. Finelli, 263 N.J. Super. 403, 405, 622 A.2d 1360 (Ch.Div. 1992); Kulakowski v. Kulakowski, 191 N.J. Super. 609, 612, 468 A.2d 733 (Ch.Div. 1982).
It is well settled that a "supporting spouse has a continuing obligation to contribute to the maintenance of the dependent spouse at the former standard of living." Guglielmo, supra, 253 N.J. Super. at 543, 602 A.2d 741 (citing Lepis, supra, 83 N.J. at 152, 416 A.2d 45). In determining support, earning capacity as well as the property and capital assets of the supporting spouse are to be considered. See Bonanno v. Bonanno, 4 N.J. 268, 273-74, 72 A.2d 318 (1950); Weitzman v. Weitzman, 228 N.J. Super. 346, 354, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989); see also Mowery v. Mowery, 38 N.J. Super. 92, 102, 118 A.2d 49 (App.Div. 1955), certif. denied, 20 *460 N.J. 307, 119 A.2d 791 (1956). Additionally, assets that are equitably distributed may also be used to satisfy an alimony obligation. Slayton v. Slayton, 250 N.J. Super. 47, 50, 593 A.2d 365 (App.Div. 1991).
As to the duration of alimony, "[t]he extent of actual economic dependency, not one's status as a wife, must determine the duration of support as well as its amount." Lepis, supra, 83 N.J. at 155, 416 A.2d 45. Rehabilitative, rather than permanent alimony may be awarded where circumstances indicate that alimony should terminate in the future. See Weber v. Weber, 211 N.J. Super. 533, 537, 512 A.2d 494 (App.Div. 1986). In Shifman v. Shifman, 211 N.J. Super. 189, 194-95, 511 A.2d 687 (App.Div. 1986), we explained:
The basic premise of an award of rehabilitative rather than permanent alimony is an expectation that the supported spouse will be able to obtain employment, or more lucrative employment, at some future date. See Hill v. Hill, 91 N.J. 506, 509-510 [453 A.2d 537] (1982); Turner v. Turner, 158 N.J. Super. 313 [385 A.2d 1280] (Ch.Div. 1978).
Thus, rehabilitative alimony may be employed where one spouse has been out of the workplace, usually raising a family and maintaining the marital home, thereby allowing the other spouse to pursue career goals. Upon separation, the unemployed spouse needs time and assistance to recover from their absence from the workplace. Rehabilitative alimony has been approved by the Supreme Court because "a party is entitled to continue at a customary standard of living inclusive of costs necessary for needed educational training." Mahoney v. Mahoney, supra, 91 N.J. at 502, 453 A.2d 527 (emphasis supplied); see also Lepis, supra, 83 N.J. at 155 n. 9, 416 A.2d 45; Smith v. Smith, 224 N.J. Super. 559, 561-62, 540 A.2d 1348 (Ch.Div. 1988).
Additionally, "[r]ehabilitative alimony, since awarded for a brief period of time, may well be for a sum greater than would have been awarded as permanent alimony." Turner v. Turner, 158 N.J. Super. 313, 318, 385 A.2d 1280 (Ch.Div. 1978). And, "the allowance of rehabilitative alimony does not preclude an allowance of permanent alimony where the woman's ability to earn *461 is less than her needs that will be necessary to maintain her same style of living." Id. at 318-19, 385 A.2d 1280.
In determining the appropriateness of awarding permanent or rehabilitative alimony or both, the Chancery Division emphasized in Finelli, supra, 263 N.J. Super. at 405-06, 622 A.2d 1360, that:
While the Legislature codified certain mandatory factors that the court must consider in all types of alimony determinations, factor No. 7 is particularly applicable to "rehabilitative" or "both".
"(7) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income."
The rehabilitative alimony concept has been applied when it is abundantly clear that it is not a "permanent" alimony case, but rather a case where the marriage is relatively short and where the recipient spouse is capable of full employment, based on experience, additional training or further education. The combination of "permanent" and "rehabilitative" alimony is relatively new, and would appear to be applicable when it is shown that the factors necessary for "permanent" alimony have been proven, as well as all factors to show ability to train or educate for future gainful employment so as to become more, though not completely, self-sufficient.
Regardless of definition, before this or any other court, appellate or otherwise, can even consider rehabilitative alimony, there must be evidence presented which could form the basis of such an award, and such factors must be proven by the greater weight of the evidence.
Applying these well-settled and fundamentally sound principles to this case, we are satisfied that the record establishes that defendant is entitled to permanent rather than rehabilitative alimony. First, plaintiff has, in light of his earning capacity and assets, the means by which to meet a modest alimony payment of $200 per month, a figure stipulated to by the parties. Second, as the trial court appropriately observed, defendant is 42 years old. In order to raise her children, she has not worked consistently during her 12 year marriage. To now expect defendant to find employment that will afford her a salary comparable to her ex-husband's is impractical and unfair. Although defendant may have earning potential because of her teaching and accounting background, there is no assurance that she will find suitable employment in either field upon her relocation absent her father's offer, and that if she does find such employment, that she would *462 earn enough to maintain her present lifestyle and economic and social status. In sum, we are satisfied that in these circumstances, the trial court did not err in awarding defendant permanent rather than rehabilitative alimony.

III.
Accordingly, the judgment under review is affirmed substantially for the reasons expressed by Judge Dilts in his thorough and thoughtful oral opinion of November 30, 1994.
NOTES
[1] At oral argument, plaintiff's counsel abandoned the appeal from Paragraph 15 of the order which declared the value of his architectural practice, fixed his interest therein for the purpose of equitable distribution and determined the responsibility for the tax consequences generated by the future disposition of his practice.