687 A.2d 797

DAVID HORSWELL, PLAINTIFF–RESPONDENT, v. PATRICIA HORSWELL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 4, 1996—Decided January 30, 1997.

Before Judges LONG, SKILLMAN and CUFF.

*Robert J. Adinolfi* argued the cause for appellant (*Adinolfi* and *Spevak*, attorneys; *Marissa J. Costello*, on the brief).

*Vincent J. Gaughan* argued the cause for respondent (*Jerrold Kamensky & Associates*, attorneys; *Mr. Gaughan*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This is a matrimonial case involving a custodial parent's application for the permission required by *N.J.S.A.* 9:2–2 to relocate to another State with the children of the marriage.

Defendant and plaintiff, a career non-commissioned Air Force officer, resided in military housing at the McGuire Air Force base. On July 13, 1993, defendant left the marital home and took the parties' two children, who were then one and three years old, to Arkansas, where her parents and other relatives reside. On August 9, 1993, defendant filed a complaint in an Arkansas state court seeking custody of the children and support.

On August 18, 1993, plaintiff filed this matrimonial action seeking a divorce, custody of the children, and various other relief. On that same day, plaintiff obtained an order to show cause which, among other things, required defendant to return to New Jersey with the children. Plaintiff subsequently obtained an order from the Arkansas court enforcing this order.

In conformity with these orders, defendant returned to New Jersey in September of 1993 and resumed occupancy of the former marital home at the McGuire Air Force base. However, when the Air Force became aware that plaintiff was not residing with defendant, it required her to vacate the premises.

As a result, defendant applied to the trial court for permission to relocate to Arkansas with the children, and on February 25, 1994, the court entered an order granting this relief. This order awarded the parties joint legal custody of the children but provided that defendant would have sole residential custody. In response to defendant's motion, the trial court entered another order on May 20, 1994 which "reconfirmed" defendant's right to reside in Arkansas with the children but directed that "[a] *Holder* hearing shall be held in view of the genuine issue of material fact concerning the temporary agreement between the parties." [1] For reasons that are not revealed by the record before us, this hearing was not commenced until more than a year later.[2]

---

[1] The appendices submitted on this appeal do not include any of the papers filed with the court in connection with the orders to show cause which resulted in the entry of the February 25, 1994, and May 20, 1994 orders or transcripts of any court proceedings relating to those orders. Consequently, the record before us does not clearly indicate the positions taken by the parties on those applications. However, we surmise from the testimony at the *Holder* hearing and the recitation in the May 20, 1994 order that there was a "temporary agreement" between the parties relating to defendant's residence in Arkansas, that plaintiff consented to, or at least did not oppose, the entry of the February 25, 1994 order allowing defendant to relocate to Arkansas, but that he considered this relocation to be temporary only.

[2] During the intervening period, a judgment of divorce was entered on May 4, 1995, which recited that the parties had "entered into stipulations which settle

Defendant testified at the hearing that she moved to Arkansas after she was evicted from McGuire Air Force base because she could not obtain housing in New Jersey and her parents were able to provide her with not only a suitable place to live but also emotional support and assistance in caring for the children. Defendant indicated that she had been residing in her parent's home, a four bedroom house located on five acres of property with a swimming pool, since moving to Arkansas, and that she and the children were in the process of moving into a two bedroom trailer on the property. She also indicated that the parties' older child was attending a local elementary school and that the younger child was enrolled in a preschool program. Defendant further testified that her grandfather, a sister and her husband, and a number of aunts, uncles and cousins, all live in close proximity to her parents' home, and that she and the children frequently see these relatives. After moving to Arkansas, defendant completed the education required to become a medical assistant, and she is currently employed full-time in this capacity. However, defendant testified that she would need additional education to obtain a job as a medical assistant in New Jersey. Defendant's parents provide her with both financial assistance and help in caring for the children while she is at work.

Plaintiff, who is a "dormitory manager" at McGuire Air Force base with the rank of "Technical Sergeant," testified that he had applied for transfers to a base in Arkansas on various occasions but that his applications were denied. Plaintiff also testified that he had no reason to be optimistic that he would be able to obtain such a transfer in the future and that he will not become eligible to retire from the Air Force for another five years. Plaintiff further testified that he had been able to visit with his children only three times during the year and a half defendant has resided in Arkansas and that his limited opportunity to be with the

all collateral issues, other than custody and visitation," and provided that the custody and visitation issues were bifurcated and would be set down for trial at a future date.

children has had a significant adverse impact upon their relationship.

Dr. Andrew Musetto, a court appointed "custody evaluator," testified that it would be "very hard to sustain a bonding between the children and their father" if plaintiff's vacation schedule limited him to thirty days of visitation each year. Therefore, although Dr. Musetto concluded that the children should remain in defendant's custody, he also recommended that she should be required to return to New Jersey. However, Dr. Musetto acknowledged in cross-examination that he had had no contact with the family since December of 1994 and that the parties' "course of conduct" during the intervening period could affect his conclusions.

The trial court found, without any discussion of the evidence presented at the hearing, that defendant did not have "a sincere, good faith reason" for moving from New Jersey to Arkansas. The court also found that defendant's move to Arkansas had adversely affected plaintiff's visitation rights. In addition, the court found that "the move was not to the best interest of the children." The court based this finding solely on "the fact that [the children] have been denied a close relationship with their father," without any discussion of other circumstances relating to the children's welfare, including whether defendant would have the financial means to support the children in New Jersey or whether the children would be adversely affected by being required to move away from their grandparents and other close relatives. Based on these findings, the court entered an order on January 11, 1996 requiring defendant to return to New Jersey with the children or, in the alternative, to transfer legal and physical custody of the children to plaintiff.

Defendant appealed, and on January 18, 1996, the trial court granted a stay of the January 11, 1996 order pending the outcome of this appeal.

We conclude that the trial court failed to make necessary findings of fact and misapplied the principles set forth in *Holder v.*

*Polanski,* 111 *N.J.* 344, 544 *A.*2d 852 (1988). Therefore, we reverse the order requiring defendant to return to New Jersey with the children and remand the case to the trial court for additional fact-finding and reconsideration.

 *N.J.S.A.* 9:2–2 provides in pertinent part that "[w]hen ... children are natives of this State, ... they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order." Thus, if a noncustodial parent of young children objects to their removal from the State, "[t]he heart of the statute is the requirement of establishing 'cause' to justify removal of the children." *Holder v. Polanski, supra,* 111 *N.J.* at 350, 544 *A.*2d 852. In interpreting this requirement, our courts have undertaken to balance the noncustodial parent's visitation rights with the custodial parent's right to seek a better life. *Ibid.* Our Supreme Court has held that "[s]hort of an adverse effect on the noncustodial parent's visitation rights or other aspects of a child's best interests, the custodial parent should enjoy the same freedom of movement as the noncustodial parent." *Id.* at 352, 544 *A.*2d 852. But if the move will require a substantial change in the noncustodial parent's visitation schedule, the trial court must consider "the prospective advantages of the move, the integrity of the motives of the party, and the development of a reasonable visitation schedule." *Id.* at 353, 544 *A.*2d 852. However, "[i]n resolving the tension between a custodial parent's right to move and a noncustodial parent's visitation rights, the beacon remains the best interests of the children." *Id.* at 353–54, 544 *A.*2d 852. Consequently, "[t]he burden remains with the noncustodial parent to prove that as a result of relocation, visitation will be affected in a way that will prove harmful to the child[ren]." *Winer v. Winer,* 241 *N.J.Super.* 510, 518, 575 *A.*2d 518 (App.Div.1990). "Motives are relevant, but if the custodial parent is acting in good faith and not to frustrate the noncustodial parent's visitation rights, that

should suffice." *Holder v. Polanski, supra,* 111 *N.J.* at 353, 544 *A.*2d 852.

 The trial court misapplied these principles in concluding that defendant failed to establish grounds for being allowed to move to Arkansas. There is no basis whatever for the court's conclusionary finding that defendant did not have a sincere good faith reason for moving from New Jersey to Arkansas. It is firmly established that "[t]he desire to live closer to ... relatives is a sufficient good faith reason for wanting to move." *Winer v. Winer, supra,* 241 *N.J.Super.* at 520, 575 *A.*2d 518; *accord Holder v. Polanski, supra,* 111 *N.J.* at 353, 544 *A.*2d 852; *Cerminara v. Cerminara,* 286 *N.J.Super.* 448, 456–57, 669 *A.*2d 837 (App.Div.), *certif. denied,* 144 *N.J.* 376, 676 *A.*2d 1091 (1996); *Murnane v. Murnane,* 229 *N.J.Super.* 520, 529, 552 *A.*2d 194 (App.Div.1989). At the time she separated from plaintiff, defendant's parents, grandfather, sister and various other relatives all lived in Arkansas, where they were available to provide defendant with both emotional support and assistance in caring for the children. Moreover, after defendant was required to vacate the military housing at McGuire Air Force base, she lacked the financial means to obtain suitable housing accommodations in New Jersey. Thus, as plaintiff apparently recognized at the time of entry of the February 25, 1994 order, defendant's move to Arkansas to live in her parents' home was the only means then available to provide adequate shelter for herself and the children. Consequently, the record clearly shows that defendant had good faith reasons for moving to Arkansas, and there is no evidence that her intention in moving was to frustrate plaintiff's visitation rights.

 It is equally clear that defendant's move has in fact "adversely affect[ed] [plaintiff's] visitation rights." *Holder v. Polanski, supra,* 111 *N.J.* at 353, 544 *A.*2d 852. Arkansas is 1,300 miles from New Jersey, and defendant's residence in that state certainly makes it more difficult for plaintiff to visit with his children than if she lived in New Jersey or a nearby area of an adjoining state. Indeed, defendant conceded at the *Holder* hear-

ing that her move to Arkansas had adversely affected plaintiff's visitation rights. However, "the fact that visitation may be made more difficult by such a move 'standing alone is insufficient' to deny defendant's relocation plan." *Cerminara v. Cerminara, supra,* 286 *N.J.Super.* at 457, 669 *A.*2d 837 (quoting *Winer v. Winer, supra,* 241 *N.J.Super.* at 520, 575 *A.*2d 518). Therefore, the trial court was required to weigh the custodial parent's right to move and the noncustodial parent's visitation rights, keeping in mind that "the beacon remains the best interests of the children." *Holder v. Polanski, supra,* 111 *N.J.* at 354, 544 *A.*2d 852.

■ Nevertheless, the court only considered the adverse affects of the move upon plaintiff's visitation rights. It did not make any findings regarding the benefits defendant and the children derive from living in Arkansas nor did it undertake to balance those benefits against the adverse affects upon the children of the impairment of plaintiff's visitation rights. Moreover, the court did not make any findings as to whether defendant would be able to obtain employment in New Jersey or whether whatever money she would be able to earn in New Jersey, together with the support received from plaintiff, would be sufficient to provide for her needs and those of the children.

■ The trial court also failed to consider whether changes could be made in plaintiff's visitation schedule which would enable him to visit his children more frequently. Although the court seemed to assume that plaintiff's only means of visitation was "by driving to Arkansas to pick up the children and returning" to New Jersey or to his parents' home in Virginia, the court should have considered whether plaintiff would be able to fly to Arkansas for more frequent short visits. We note in this respect that a custodial parent who is allowed to move out-of-state may be required in appropriate circumstances to pay some or even all of the transportation costs which the noncustodial parent must incur to exercise visitation rights. *Santucci v. Santucci,* 221 *N.J.Super.* 525, 531, 535 *A.*2d 32 (App.Div.1987).

Moreover, the court made no findings as to whether the children would be adversely affected by a separation from their grandparents and other close relatives who live in Arkansas. Although a young child's most significant emotional attachments ordinarily are with its parents, a child also may develop extremely close attachments to grandparents and other relatives.

The trial court should have taken into account that by the time the *Holder* hearing was concluded the children had already been living in Arkansas for more than a year and a half, during which time they had grown attached to their mother's family and accustomed to their schools and other activities in Arkansas. Similarly, we cannot ignore the fact that another year has elapsed since the conclusion of the *Holder* hearing and that the children have continued to live in Arkansas pursuant to court order during that time. Children's lives do not just stand still while their parents engage in protracted litigation affecting their interests. Therefore, a court must consider children's present circumstances, including circumstances which result from *pendente lite* orders, in ruling upon issues relating to custody, visitation or other matters affecting their welfare. *See Holder v. Polanski, supra,* 111 *N.J.* at 354, 544 *A.*2d 852; *In re Baby M,* 109 *N.J.* 396, 456, 537 *A.*2d 1227 (1988); *Wist v. Wist,* 101 *N.J.* 509, 513–14, 503 *A.*2d 281 (1986).

Consequently, the case must be remanded to the trial court to make the additional findings of fact required for a proper decision and to reconsider its conclusions in light of those findings. *See Holder v. Polanski, supra,* 111 *N.J.* at 354, 544 *A.*2d 852; *Cooper v. Cooper, supra,* 99 *N.J.* at 58–59, 491 *A.*2d 606; *Winer v. Winer, supra,* 241 *N.J.Super.* at 521, 575 *A.*2d 518; *Murnane v. Murnane, supra,* 229 *N.J.Super.* at 530–31, 552 *A.*2d 194. In light of the time which has elapsed since the issue of defendant's right to move to Arkansas was first presented to the trial court, we direct that the remand be completed within ninety days. Moreover, since the *Holder* hearing was conducted more than a year ago, either party may apply to the trial court for leave to supplement the record. Jurisdiction is not retained.